1

2

THE HONORABLE _____

3

4

        _____ FILED _____ ENTERED
        _____ LODGED _____ RECEIVED

5

JUL 0 8 2025   MH

6

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

BY _____ DEPUTY

8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9

### AT SEATTLE

10

11

QueerDoc, PLLC,

              Movant,

12

    v.

13

U.S. Department of Justice,

14

            Respondent.

15

16

Case No.  2:25-mc-00042-JNW

QueerDoc, PLLC's Motion to Quash Subpoena Duces Tecum

NOTE ON MOTION CALENDAR: JULY 29, 2025

ORAL ARGUMENT REQUESTED

**FILED UNDER SEAL**

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    A.    Gender Affirming Care ............................................................................... 2

    B.    QueerDoc ..................................................................................................... 2

    C.    The Administration's Campaign to Stop Gender Affirming Care ........................... 3

    D.    Procedural History ...................................................................................... 5

ARGUMENT ............................................................................................................................ 6

    A.    The Subpoena is Unlawfully Motivated by an Improper, Discriminatory
          Purpose ..................................................................................................... 6

    B.    Additionally, the Subpoena is Overly Broad and Unduly Burdensome ................. 9

          1.    The Subpoena is Overly Broad ..................................................... 9

          2.    The Subpoena is Unduly Burdensome ....................................... 11

CONCLUSION ...................................................................................................................... 13

**Arnold & Porter**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1

# TABLE OF AUTHORITIES

**Cases**

*Consumer Fin. Prot. Bureau v. Future Income Payments, LLC,*
  252 F. Supp. 3d 961 (C.D. Cal. 2017) ....................................................... 11

*Crystal v. United States,*
  172 F.3d 1141 (9th Cir. 1999) ................................................................... 6

*Doe v. United States,*
  253 F.3d 256 (6th Cir. 2001) ..................................................................... 10

*Edmo v. Corizon,*
  935 F.3d 757 (9th Cir. 2019) ..................................................................... 2

*EEOC v. Children's Hosp. Med. Cntr. of N. Cal.,*
  719 F.2d 1426 (9th Cir. 1983) ................................................................... 9

*F.T.C. v. Texaco, Inc.,*
  555 F.2d 862 (D.C. Cir. 1977) ................................................................... 11

*FDIC v. Garner,*
  126 F.3d 1138 (9th Cir. 1997) ................................................................... 9

*In re Subpoena Duces Tecum,*
  228 F.3d 341 (4th Cir. 2000) ..................................................................... 7

*Khukhrov v. Nat'l Lab. Rels. Bd.,*
  2017 WL 7806597 (C.D. Cal. June 27, 2017) ........................................... 9

*Lacey v. Maricopa Cty.,*
  693 F.3d 896 (9th Cir. 2012) ..................................................................... 6, 8

*Linder v. United States,*
  286 U.S. 5 (1925) ...................................................................................... 7

*Mo. Baptist Med. Ctr. v. U.S. Dep't of Just.,*
  2023 WL 315021 (E.D. Mo, Jan. 19, 2023) .............................................. 10

*Nat'l Lab. Rels. Bd. v. Ampersand Publ'g, LLC,*
  2015 WL 12746237 (C.D. Cal. Dec. 1, 2015) ........................................... 9

*New York v. Trump,*
  769 F. Supp. 3d 119 (D.R.I. 2025) ............................................................ 1

*Nw. Memorial Hosp. v. Ashcroft,*

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

iii

**Arnold & Porter**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

362 F.3d 923 (7th Cir. 2004) ........................................................................... 12

*PFLAG, Inc. v. Trump,*
    766 F. Supp. 3d 535 (D. Md. 2025) ............................................................ 1, 4

*President and Fellows of Harvard College v. U.S. Dep't of Homeland Sec.,*
    --- F. Supp. 3d ---, 2015 WL 1737393 (D. Mass. June 23, 2025) ................. 8

*Prudential Ins. Co. of Am. v. Lai,*
    42 F.3d 1299 (9th Cir. 1994) ...................................................................... 9

*Reich v. Mont. Sulphur & Chem. Co.,*
    32 F.3d 440 (9th Cir. 1994) ........................................................................ 6

*Resiman v. Caplin,*
    375 U.S. 440, 445 (1964) ............................................................................ 6

*Romer v. Evans,*
    517 U.S. 620 (1996) .................................................................................... 8

*S.F. A.I.D.S. Found. v. Trump,*
    --- F. Supp. 3d ---, 2025 WL 1621636 (N.D. Cal. June 9, 2025) ................. 1

*Smith v. United States,*
    14 F. App'x 542 (6th Cir. 2001) ................................................................. 6

*Solis v. Forever 21, Inc.,*
    2013 WL 1319769 (C.D. Cal. Mar. 7, 2013) .............................................. 6

*Tucson Woman's Clinic v. Eden,*
    379 F.3d 531 (9th Cir. 2004) ..................................................................... 12

*United States v. Agrama,*
    2023 WL 4486735 (9th Cir. July 12, 2023) ............................................... 7

*United States v. LaSalle Nat'l Bank,*
    437 U.S. 298 (1978) .................................................................................... 7

*United States v. Powell,*
    379 U.S. 48 (1964) ...................................................................................... 6

*United States v. Samuels, Kramer and Co.,*
    712 F.2d 1342 (9th Cir. 1983) .................................................................... 8

*United States v. Watkins,*
    278 F.3d 961 (9th Cir. 2002) ..................................................................... 10

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

iv

*United States v. Westinghouse Elec. Corp.*,
   638 F.2d 570 (3d Cir. 1980)...........................................................................12

*Washington v. Trump*,
   766 F. Supp. 3d 1138 (W.D. Wash. 2025)...............................................1, 2, 4

*Washington v. Trump*,
   768 F. Supp. 3d 1239 (W.D. Wash. 2025)..........................................................8

**Statutes**

18 U.S.C. § 24.........................................................................................................7

18 U.S.C. § 3486...................................................................................................1,5

21 U.S.C. § 396.....................................................................................................10

21 U.S.C. § 331.....................................................................................................10

21 U.S.C. §§ 301 *et seq.*.........................................................................................5

Cal. Civ. Code § 56.10.........................................................................................12

Org. Rev. State § 192.553.....................................................................................12

Wash. Rev. Code § 70.02.20.................................................................................11

Wash. Rev. Code § 702.02.020............................................................................12

**Executive Orders**

EO 14168, "Defending Women from Gender Ideology Extremism and Restoring
   Biological Truth to the Federal Government," 90 Fed. Reg. 8615 (Jan. 20, 2025)...................3, 5

EO 14187, "Protecting Children from Chemical and Surgical Mutilation," 90 Fed.
   Reg. 8771 (Jan. 28, 2025).............................................................................passim

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

# INTRODUCTION

Since taking office nearly six months ago, the Trump Administration has made its views on transgender individuals clear: it aims to stop them from receiving necessary, evidenced-based, life-saving gender affirming medical care, and to intimidate and harass the providers of such care so that they no longer feel safe providing it.  Immediately upon taking office, the President issued two executive orders directed at transgender individuals, one of which, EO 14187,[1] specifically took aim at gender affirming care.  On February 14, 2025, United States District Judge Lauren King held that much of that Executive Order did not survive constitutional scrutiny and, like other federal courts across the country, issued relief halting enforcement of the President's unlawful efforts to withhold federal funding and otherwise to interfere with the States' sovereign authority to regulate this life-saving care themselves.[2]  Notwithstanding these decisions, the Administration has celebrated what it has itself called the "intended effect" of these executive orders: to "downsize or eliminate" *all* gender affirming care throughout the country.

The Administration's latest effort to stop patients from accessing gender affirming care came in mid-June, when the U.S. Department of Justice ("DOJ") began to implement EO 14187's directive, issuing an administrative subpoena (the "Subpoena") to QueerDoc, PLLC ("QueerDoc"), a telehealth provider of gender affirming care to transgender and gender-diverse individuals in ten states, including Washington.

The Subpoena was not served pursuant to a *bona fide* investigation into purported violations of healthcare fraud.  Rather, the Subpoena appears to be just the latest step in the Administration's discriminatory campaign to stop transgender individuals from receiving gender affirming care and to prevent healthcare providers from delivering this care.  Because of the

---

[1] "Protecting Children from Chemical and Surgical Mutilation," 90 Fed. Reg. 8771 (Jan. 28, 2025).

[2] *Washington v. Trump*, 766 F. Supp. 3d 1239 (W.D. Wash. 2025); *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535 (D. Md. 2025); *S.F. A.I.D.S. Found. v. Trump*, --- F. Supp. 3d ---, 2025 WL 1621636 (N.D. Cal. June 9, 2025); *New York v. Trump*, 769 F. Supp. 3d 119 (D.R.I. 2025).

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1  Subpoena's discriminatory purpose and expansive breadth, pursuant to 18 U.S.C. § 3486(5),

2  QueerDoc respectfully requests that the Court quash this Subpoena in its entirety.

3  **BACKGROUND**

4  **A.    Gender Affirming Care**

5        Gender affirming care supports the health of transgender and gender-diverse people by

6  helping them to live consistent with their gender identity. *Washington*, 768 F. Supp. 3d at 1272-

7  73. It is supported by overwhelming consensus in the medical community, including by the

8  American Academy of Pediatrics, the American College of Obstetricians and Gynecologists, the

9  American Medical Association, the American Psychological Association, and the Pediatric

10 Endocrine Society, among others. *Id.* at 1273-74. It is also explicitly protected by numerous state

11 laws, including by the State of Washington. *See* Wash. Rev. Code § 74.09.675.

12       Extensive medical research and clinical experience demonstrate that treating gender

13 dysphoria with gender affirming care is safe and effective. *See Washington*, 768 F. Supp. 3d at

14 1273. Left untreated, gender dysphoria can cause severe anxiety and depression, eating disorders,

15 substance abuse, self-harm, and suicidality. *Edmo v. Corizon*, 935 F.3d 757, 769 (9th Cir. 2019).

16 Gender affirming care can include, for appropriate patients, treatment with puberty blockers to

17 delay the onset of puberty, as well as hormone therapy. *Washington*, 768 F. Supp. 3d at 1276 n.25.

18 Providers of gender affirming care take a holistic approach to treating a patient, taking into account

19 the patient's physical and psychological needs, and work with patients and their families to ensure

20 that their treatment decisions are informed and appropriate. *See id.* at 1265-66.

21 **B.    QueerDoc**

22       QueerDoc was founded in 2018 by Dr. Crystal Beal to advance the standard of care for

23 gender affirming care and improve transgender and gender diverse lives through telemedicine-

24 based direct clinical services. Ex. 1, Declaration of Dr. Crystal Beal, M.D. ¶ 8 (July 8, 2025)

25 ("Beal Decl."). Dr. Beal is board-certified in family medicine and has spent years treating

26 transgender individuals. *Id.* ¶ 3. Dr. Beal received their medical degree from the Florida State

27 University College of Medicine and has sought extensive additional training in sexual health,

28 MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

**Arnold & Porter**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

LGBTQ+ health, and gender affirming care including self-study, continuing medical education trainings, and shadowing experts in the community. *Id.* ¶¶ 4-5. Dr. Beal is a Clinical Instructor at the University of Washington School of Medicine and has advised a large regional medical center on its adolescent gender clinic protocols. *Id.* ¶ 6. Dr. Beal and QueerDoc's other providers treat patients with non-surgical medical and non-medical interventions. *Id.* ¶ 8.

**C.    The Administration's Campaign to Stop Gender Affirming Care**

The Administration's views on gender affirming care are not a secret. In a January 2023 video posted to Truth Social, the President promised that, if re-elected, he would punish providers of gender affirming care and issue executive orders designed to end such care. Alex Seitz-Wald and Jo Yurcaba, "Trump vows to 'stop' gender-affirming care for minors if re-elected president," *NBC News* (Jan. 31, 2023), *available at* https://perma.cc/YR4S-9T9A.

On January 20, 2025—the very day that the President took office—he began to do just that, issuing his first Executive Order relating to transgender individuals. EO 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," 90 Fed. Reg. 8615 (Jan. 20, 2025) (the "January 20 Order"). The January 20 Order purported to make it "the policy of the United States to recognize two sexes, male and female." *Id.* § 2. In the view of the Administration, so-called "'[g]ender ideology'" "permit[s] the false claim that males can identify as and thus become women and vice versa, and requir[es] all institutions of society to regard this false claim as true." *Id.*

On January 28, 2025, the President went further, taking aim specifically at gender affirming care. EO 14187, "Protecting Children from Chemical and Surgical Mutilation," 90 Fed. Reg. 8771 (Jan. 28, 2025) (the "January 28 Order"). The January 28 Order characterized the lawful provision of gender affirming care by licensed medical professionals as the "maiming and sterilizing of a growing number of impressionable young children." *Id.* § 1. It further called gender affirming care "a stain on our Nation's history" that "must end." *Id.* Pursuant to the January 28 Order's stated goal of "end[ing]" gender affirming care, it directed DOJ to "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug,

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1  and Cosmetic Act by any entity that may be misleading the public about long-term side effects of

2  chemical and surgical mutilation."[3]  *Id.* § 8(c).

3        Several weeks later, DOJ took action to implement the President's order.  On April 22,

4  2025, Attorney General Pam Bondi directed DOJ component heads, in an internal memorandum

5  referring to the January 28 Order, to "investigate and hold accountable medical providers and

6  pharmaceutical companies that mislead the public about the long-term side effects of" gender

7  affirming care, which the Attorney General termed "chemical and surgical mutilations." Ex. 4 (the

8  "Bondi Memo"), at 4.  The Bondi Memo directed the Consumer Protection Branch to "undertake

9  appropriate investigations of any violations of the Food, Drug and Cosmetic Act by manufacturers

10 and distributors engaged in misbranding making" purported "false claims" regarding "puberty

11 blockers, sex hormones," and similar drugs.  *Id.*

12       In an effort to further implement the Bondi Memo, Assistant Attorney General Brett

13 Shumate issued a memorandum to DOJ Civil Division employees on June 11, 2025, which

14 identified as a priority "protecting women and children," through further enforcement of the

15 January 20 and 28 Orders. Ex. 5 (the "Shumate Memo").  The Shumate Memo cited the Bondi

16 Memo, but went even further, stating that:

17
18        The Civil Division will use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with these
19        directives . . . [including] possible violations of the [FDCA] and other laws by (1) pharmaceutical companies that manufacture drugs used in connection with so-called
20        gender transition and (2) dealers such as online pharmacies suspected of illegally selling such drugs.

21
22 Id. at 2-3.

23       Federal district courts in several jurisdictions have since enjoined portions of the January

24 20 and 28 Orders, in part due to their discriminatory animus and effect.  *See, e.g., Washington*, 766

25 F. Supp. 3d at 1250; *PFLAG*, 766 F. Supp. 3d at 570.

---

26 [3]  As the *Washington* court recognized, discriminatory animus pervades much of the January 28
27 Order, *see* 768 F. Supp. 3d at 1146, but here only the prosecutorial policy in the January 28 Order (section 8(c)) is at issue.

28 MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)                                   4

1    Notwithstanding these injunctions, significant damage has been done.  In the wake of the

2    orders, hospitals around the country announced they will no longer provide gender affirming care.

3    Associated Press, "Some hospitals pause gender-affirming care to evaluate Trump's executive

4    order" *NBC News* (Jan. 30, 2025) *available at* https://perma.cc/D4HA-MHDP.   Citing those

5    announcements, the White House issued a statement on February 3, 2025, proclaiming that the

6    January 28 Order was "already having its intended effect—preventing children from being maimed

7    and sterilized by adults perpetuating a radical, false claim that they can somehow change a child's

8    sex."  The White House, "President Trump is Delivering on His Commitment to Protect Our Kids"

9    (Feb. 3, 2025), *available at* https://perma.cc/P443-RF6A (the "February 3 Statement").

10    **D.    Procedural History**

11    The Subpoena was issued to QueerDoc by DOJ's Consumer Protection Branch on June 11,

12    2025, signed by Assistant Attorney General Brett Shumate.  Ex. 2 at 1.  The Subpoena was issued

13    pursuant to Section 248 of the Health Insurance Portability & Accountability Act of 1996, Public

14    Law No. 104-91 (18 U.S.C. § 3486) ("HIPAA") and purports to be investigating "Federal health

15    care offenses as defined in 18 U.S.C. § 24(a)," which enumerates a list of more than 20 federal

16    health care offenses, including the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*

17    ("FDCA").  *Id.*

18    The Subpoena seeks a wide range of documents and data relating to QueerDoc's provision

19    of gender affirming care.  *See generally id.*  Most concerning, the Subpoena seeks QueerDoc's

20    medical records for every patient prescribed puberty blockers or hormone therapy.  *Id.* at 6-7.

21    On June 26, 2025, counsel for QueerDoc contacted the DOJ attorneys identified on the

22    Subpoena and conferred with them later that day.  Ex. 2, Declaration of Paula R. Ramer ¶ 5.  When

23    asked about the basis for this investigation, the DOJ attorneys referred to the January 20 and 28

24    Orders and the Bondi Memo and stated that they had been tasked with investigating potential

25    violations of the FDCA.  *Id.* ¶ 6.  They also stated that they had been asked to make "frequent and

26    extensive reports" to DOJ "senior leadership."  *Id.*

27

28    MOT. TO QUASH SUBPOENA DUCES TECUM                                    Arnold & Porter
      (No._____)                                                  601 Massachusetts Ave, NW
                                                      5                     Washington, DC 20001-3743
                                                                            Telephone: +1 202.942.5000

1   When asked whether the DOJ attorneys had specific concerns regarding QueerDoc, the

2   DOJ attorneys stated only that they are aware that QueerDoc is a "prominent" provider of gender

3   affirming care through telehealth and that it prescribes puberty blockers and hormones "under the

4   FDCA." *Id.* ¶ 7. They added, however, that there was nothing more of concern, saying "that's the

5   extent of it." Regarding the July 9 return date on the Subpoena, the DOJ attorneys said that they

6   were not able to grant any extension of time to respond and that, although they did not expect

7   production to be complete by that date, they would require QueerDoc to begin producing

8   documents by that date. *Id.* ¶ 8.

9                                        **ARGUMENT**

10   The government's subpoena power is not boundless. It is limited to the statutory purpose

11   for which Congress provided, *United States v. Powell*, 379 U.S. 48, 57 (1964), and by the

12   Constitution itself. *Resiman v. Caplin*, 375 U.S. 440, 445 (1964). Ending gender affirming care

13   is not a valid statutory purpose of a HIPAA subpoena—yet DOJ has issued the Subpoena for

14   precisely that reason. Furthermore, by targeting the transgender community alone, the government

15   selectively and discriminatorily wields its subpoena power in violation of the Equal Protection

16   Clause. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 924 (9th Cir. 2012). As such, the Subpoena

17   is unlawful on its face. Even if the Subpoena was facially valid, it is impermissibly overbroad,

18   unduly burdensome and it infringes mightily on patient privacy protections. For each of these

19   reasons, the Court should quash the Subpoena in its entirety.

20   **A.    The Subpoena is Unlawfully Motivated by an Improper, Discriminatory**
         **Purpose**

21

22   Administrative subpoenas, including the subpoena here, must "be conducted pursuant to a

23   legitimate purpose." *See United States v. Powell*, 379 U.S. 48, 57 (1964); *see also, e.g., Reich v.*

     *Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 445 (9th Cir. 1994) (investigative subpoena may only

24   be issued "for a lawfully authorized purpose"); *Solis v. Forever 21, Inc.*, 2013 WL 1319769, at *2

25   (C.D. Cal. Mar. 7, 2013) (a "civil investigative subpoena" may be enforced only if it is sought

26   "pursuant to a lawfully authorized legitimate purpose"). Where an administrative subpoena is

27

28   MOT. TO QUASH SUBPOENA DUCES TECUM
     (No._____ )
                                        6

1   issued for an "improper purpose," including to "harass [an investigation's target]," the subpoena

2   should be quashed. *See, e.g.*, *Smith v. United States*, 14 F. App'x 542, 545 (6th Cir. 2001) (quoting

3   *Powell*, 379 U.S. at 58); *see also Crystal v. United States*, 172 F.3d 1141, 1145 (9th Cir. 1999).

4       Demonstrating a subpoena was issued for an improper purpose requires a showing of

5   "either a lack of institutional good faith" or an abuse of process. *United States v. Agrama*, 2023

6   WL 4486735, at *1 (9th Cir. July 12, 2023) (unpublished) (quoting *United States v. LaSalle Nat'l*

7   *Bank*, 437 U.S. 298, 314-16 (1978)).  Here, the public record illustrates that the Subpoena meets

8   that standard.

9       The sole purpose of a HIPAA subpoena is to "investigat[e] [] federal healthcare offenses."

10  *In re Subpoena Duces Tecum*, 228 F.3d 341, 343-44 (4th Cir. 2000).  Not surprisingly, the

11  provision of gender affirming care is *not* one of the federal healthcare offenses enumerated in 18

12  U.S.C. § 24, and whose regulation, in any event, is exclusively left to the States, *cf. Linder v.*

13  *United States*, 286 U.S. 5, 18 (1925) ("[D]irect control of medical practice in the states is beyond

14  the power of the federal government.").  Yet, as the White House itself has explained, when the

15  President directed FDCA investigations targeting providers of gender affirming care, 90 Fed. Reg.

16  at 8772-73, the "intended effect" of that directive was not to investigate potentially misleading

17  claims about drugs used in gender affirming care.  Rather, as the White House's February 3

18  Statement makes clear, the true purpose of the January 28 Order was to "downsize or eliminate"

19  *all* gender-affirming care.    February 3 Statement, *supra* (celebrating various hospitals'

20  announcements that because of the January 28 Order each would discontinue gender affirming

21  care programs).

22      Indeed, Attorney General Bondi announced DOJ's improper motivation for the

23  investigation when she claimed that gender affirming care is a "radical ideological agenda"

24  "pushed by far-left politicians, celebrities, politically captured academics, and legacy media" that

25  has forced "[d]issenting voices" into "acquies[ing] in" "permanent [and] life-altering chemical and

26  surgical intervention."  Bondi Memo at 1.  The Attorney General further lamented that, in her

27  view, children have been "left permanently disfigured, scarred, and sterilized" by gender affirming

28  MOT. TO QUASH SUBPOENA DUCES TECUM
    (No._____)                                            7

care. *Id.* Consistent with the January 28 Order—which was "signed to halt the [purported] exploitation" of children through "radical gender ideology" and "gender-affirming care"—the Bondi Memo announced that DOJ would attempt to "hold accountable those who prey on vulnerable children and their parents." *Id.* at 2-3.

At the highest levels of government, the Administration has made clear that the Subpoena is but a pretextual means of seeking to stop medical treatment that is legal under both state and federal law.[4] The actual purpose of the Subpoena is to shutter QueerDoc in its entirety. And that is the *sine qua non* of bad faith. *See United States v. Samuels, Kramer and Co.*, 712 F.2d 1342, 1347 (9th Cir. 1983) (subpoena issued in any part to "close [movant's business] down" should be quashed as issued in bad faith and for improper purpose).

The constitutional significance of the government's discriminatory motives cannot be understated. As District Court Judge King recently held, much of the January 28 Order violates the Equal Protection Clause. *Washington*, 768 F. Supp. 3d at 1250. As Judge King observed, healthcare providers that provide puberty blockers to a cisgender teen are safe from government action under the January 28 Order, but those who provide puberty blockers to a non-cisgender teen are subject to government intimidation and harassment. *See id.* "Such '[a] bare desire to harm a politically unpopular group'" offends the Equal Protection Clause. *See id.* (quoting *Romer v. Evans*, 517 U.S. 620, 634 (1996)); *see also, e.g.*, *Lacey*, 693 F.3d at 920.

To be clear, it is the Administration's *own* statements that illustrate the government's true, discriminatory purpose in issuing the Subpoena. The Court can—and should—find improper purpose and bad faith from these statements alone. *Cf., e.g.*, *President and Fellows of Harvard College v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2025 WL 1737493, at *13 (D. Mass.

---

[4] The Executive Branch may not use its subpoena power to accomplish a task reserved for the Legislative Branch. In 2023, then-Senator J.D. Vance unsuccessfully introduced a bill, which if enacted, would ban gender affirming care nationally, S. 2357 (July 18, 2023), a subsequent version of which has since been introduced in the current Congress, H.R. 3492 (May 19, 2025). Having failed to enact its stated policy into statutory law (even assuming *arguendo* its constitutionality), the Executive Branch may not now intimidate and harass providers of lawful medical services through administrative subpoenas to attempt to accomplish its stated policy through other means.

June 23, 2025) (finding executive order was motivated by bad faith from face of order itself and other public statements by Administration officials). At the very least, and in the alternative, QueerDoc has presented sufficient evidence of bad faith and improper motive to warrant discovery and/or an evidentiary hearing. *See Samuels*, 712 F.2d at 1347 (holding it was an abuse of discretion to forgo evidentiary hearing where specific facts underlying allegation of bad faith were averred by sworn affidavit).

### B.     Additionally, the Subpoena is Overly Broad and Unduly Burdensome

When determining whether to quash a subpoena, "[t]he critical questions [for the Court are]: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *EEOC v. Children's Hosp. Med. Cntr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (citations omitted), overruled on other grounds by *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994); *see also Khukhrov v. Nat'l Lab. Rels. Bd.*, 2017 WL 7806597, at *3 (C.D. Cal. June 27, 2017). "If these factors are shown by the agency, the subpoena should be enforced *unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome*." *Id.* (emphasis added) (citations omitted). As discussed below, even if the Subpoena had been issued for a lawful purpose—which it has not—it is both overbroad and unduly burdensome.

#### 1.     The Subpoena is Overly Broad

The scope of the Subpoena—including the number of requests that are wholly inapplicable to a purported investigation into potential violations of the FDCA—coupled with DOJ's explicit acknowledgement that it has no specific basis for investigating QueerDoc, demonstrate that the Subpoena is nothing more than an improper "fishing expedition" by the DOJ. *FDIC v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) ("An administrative subpoena ... may not be so broad so to be in the nature of a 'fishing expedition.'"); *see also, e.g., Nat'l Lab. Rels. Bd. v. Ampersand Publ'g, LLC*, 2015 WL 12746237, at *8 (C.D. Cal. Dec. 1, 2015) (finding an administrative subpoena overly broad where it requested irrelevant and personal information regarding

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1  individuals' cell phone bill statements unrelated to the investigation), *report and recommendation*

2  *adopted*, 2016 WL 7198680 (C.D. Cal. Feb. 3, 2016).

3         As noted, when counsel for QueerDoc spoke with DOJ regarding the Subpoena, the DOJ

4  attorneys advised that, per the January 20 and 28 Orders and the Bondi Memo, they had been

5  tasked with investigating potential violations of the FDCA.  Ramer Decl. ¶ 6.  Yet, when asked

6  whether they had particular concerns about QueerDoc, they stated only that they were aware that

7  QueerDoc is a "prominent" provider of gender affirming care but otherwise could cite no specific

8  concerns regarding QueerDoc that would justify use of subpoena power.  *Id.* ¶ 7.  As an initial

9  matter, it is not possible for QueerDoc—or the Court—to determine the proper "scope" of the

10  Subpoena in light of such a vague answer, *see Doe v. United States*, 253 F.3d 256 (6th Cir. 2001),

11  given that, for each request, the details of the underlying investigation are key to the overbreadth

12  analysis, *see, e.g.*, *id.* at 268; *Mo. Baptist Med. Ctr. v. U.S. Dep't of Just.*, 2023 WL 315021 (E.D.

13  Mo, Jan. 19, 2023).

14         Nor could the Subpoena be recast as furthering an investigation into potential FDCA

15  violations. The FDCA regulates the "adulteration" or "misbranding" of "food, drug[s], tobacco

16  product[s], [and] cosmetic[s]."  21 U.S.C. §§ 331(a)-(c); *see also, e.g.*, *United States v. Watkins*,

17  278 F.3d 961, 964 (9th Cir. 2002).  Much of the Subpoena, however, has no conceivable

18  connection to a possible FDCA violation.  For example, five of the Subpoena's 15 requests seek

19  documents relating to QueerDoc's billing and coding practices (*e.g.*, Request 4, "All documents

20  reflecting communications among Company employees (including physicians, billing staff, and

21  administrators), or between the Company and any third party, relating to whether or how to code

22  or bill for treatment of gender dysphoria by using alternative diagnoses or alternative ICD codes.").

23  Even more egregiously, the Subpoena includes three requests seeking information related to the

24  highly sensitive medical records of *all* patients—including minor children—who have been

25  prescribed puberty blockers or hormones, without making any connection to whether there is a

26  possibility that the drugs prescribed were somehow "misbranded."

27

28  MOT. TO QUASH SUBPOENA DUCES TECUM
   (No._____)                    10

1   It is not surprising that a subpoena issued to a healthcare provider would have no basis to

2   seek documents and data relating to potential violations of the FDCA, a statute that has historically

3   been used to prosecute pharmaceutical manufacturers alleged to have promoted their drugs off

4   label.  Healthcare providers, on the other hand, may freely prescribe drugs off label, consistent

5   with their clinical judgment, as the Food and Drug Administration ("FDA") has long recognized.[5]

6   Indeed, even the Bondi and Shumate Memos implicitly recognize that the FDCA does not

7   reach healthcare providers.  For instance, in directing the Consumer Protection Branch to

8   investigate the potential misbranding of puberty blockers or hormones, the Bondi Memo directs

9   investigations of "manufacturers and distributors"—not healthcare providers.  Likewise, the

10  portion of the Shumate Memo that tasks the Consumer Protection Branch with investigating

11  potential violations of the FDCA focuses on investigations of "pharmaceutical companies that

12  manufacture drugs used in connection with so-called gender transition"—again, not healthcare

13  providers.

14  For these reasons, the Subpoena is overly broad in its entirety and should be quashed.

15            2.    The Subpoena is Unduly Burdensome

16  The Subpoena also should be quashed because compliance would be unduly burdensome

17  to QueerDoc, "threaten[ing] to unduly disrupt or seriously hinder" its "normal operations."  *See,*

18  *e.g.*, *Consumer Fin. Prot. Bureau v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 970

19  (C.D. Cal. 2017), *order vacated in irrelevant part*, 2018 WL 7502720 (C.D. Cal. Dec. 18, 2018)

20  QueerDoc is a small telehealth company.  Apart from Dr. Beal, QueerDoc has one

21  administrative employee. Beal Decl. ¶ 11.  QueerDoc does not have an IT department or medical

22  records department and would need to retain a consultant to comply with the Subpoena.  *Id.* ¶¶ 11-

23  12.  The tasks necessary—collecting, reviewing and producing documents and data on as many as

24  2,500 patients—would materially disrupt QueerDoc's business operations and ongoing patient

25

---

26  [5]  FDA, *FDA's Role in Regulating Medical Devices* (Aug. 31, 2018) *available at*
    https://www.fda.gov/medical-devices/home-use-devices/fdas-role-regulating-medical-devices.
27  *See also* 21 U.S.C. § 396.

28  MOT. TO QUASH SUBPOENA DUCES TECUM
    (No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1  care. *Id.* ¶¶ 12-14.  And it is not just compliance with this Subpoena that QueerDoc must consider.

2  QueerDoc operates in nine other states besides the State of Washington, each of which imposes its

3  own regulatory regime.  *Id.* ¶ 15.  Should the Court enforce the Subpoena, Washington law, for

4  instance, would require QueerDoc to compile "an accounting of disclosures of health care

5  information" for each of the Washington patient files it discloses to DOJ, and then make that

6  accounting available to each patient in Washington on demand.  Wash. Rev. Code § 70.02.020(2).

7  When considering the significant time and cost that review and implementation would take, full

8  compliance would threaten to put QueerDoc out of business.  Beal Decl. ¶ 17.

9        The Subpoena also substantially burdens patient privacy.  Circuit courts throughout the

10  country, including the Ninth Circuit Court of Appeals, have recognized the significant privacy

11  interests at stake in production and disclosure of sensitive medical records.  *See, e.g., Tucson*

12  *Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (reproductive-health records)

13  *abrogated in irrelevant part by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022);

14  *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 581 (3d Cir. 1980) ("highly confidential"

15  "physician medical matters").  Here, those privacy interests are further reinforced by the laws of

16  states like Washington, which also afford robust state law privacy protection of medical records.[6]

17  Recognizing the importance of these privacy interests, courts routinely quash subpoenas that

18  intrude upon patient confidentiality.  *See, e.g., Nw. Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 932

19  (7th Cir. 2004) (affirming order quashing HIPAA subpoena as unduly burdensome where it sought

20  reproductive-health records protected by state law).

21        Here, the Subpoena's request for medical records identifying as many as 2,500 patients,

22  including minors, who have confidentially sought gender affirming care from QueerDoc,

23  significantly interferes with the privacy interests of each of these individuals.  Combined with the

24  costs of compliance, these weighty interests compel the conclusion that the Subpoena is unduly

25  burdensome in its entirety.

26  _____

27  [6] *E.g.*, Wash. Rev. Code § 702.02.020(1); Cal. Civ. Code § 56.10(a); Org. Rev. State § 192.553(1)(A).

28  MOT. TO QUASH SUBPOENA DUCES TECUM
    (No._____)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

1

**CONCLUSION**

2      Consistent with the undisguised discriminatory purpose articulated at the highest levels of

3 the Administration, DOJ has served the Subpoena to investigate purported violations of a federal

4 statute that does not apply to the recipient's business, solely because that business provides lawful

5 medical services that the federal government does not like as a matter of policy.  Neither the federal

6 statute on which DOJ relies nor the Constitution permit such intimidation and harassment.  And

7 even if the Subpoena were issued in furtherance of a lawful purpose—it was not—its requests are

8 overly broad and unduly burdensome.  For all these reasons, the Subpoena should be quashed.

9

10                                    *        *        *

11      The undersigned certifies that this motion contains 4,163 words, in compliance with LCR

12 7(e)(2).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)                                    13

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000

DATED this 8th day of July, 2025.

By: _____
     Harry H. Schneider, Jr., WSBA No. 9404
     David B. Robbins, WSBA No. 13628
     Shireen Lankarani, WSBA No. 61792
     **Perkins Coie LLP**
     1301 Second Avenue Suite 4200
     Seattle, Washington 98101
     Telephone: (206) 359-8000
     Facsimile: (206) 359-9000
     HSchneider@perkinscoie.com
     DRobbins@perkinscoie.com
     SLankarani@perkinscoie.com

     Paula R. Ramer
     *(pro hac vice application forthcoming)*
     Marcus A. Asner
     *(pro hac vice application forthcoming)*
     Brittney Nagle
     *(pro hac vice application forthcoming)*
     **Arnold & Porter Kaye Scholer LLP**
     250 West 55th Street
     New York, NY 10019
     Telephone: (212) 836-8000
     Facsimile: (212) 836-8689
     Paula.Ramer@arnoldporter.com
     Marcus.Asner@arnoldporter.com
     Bee.Nagle@arnoldporter.com

Jaclyn Machometa
*(pro hac vice application forthcoming)*
**Arnold & Porter Kaye Scholer LLP**
500 Boylston Street, 20th Floor
Boston, MA 02116
Telephone: (617) 351-8050
Facsimile: (617) 226-9199
Jaclyn.Machometa@arnoldporter.com

Samuel D. Kleinman
*(pro hac vice application forthcoming)*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Sam.Kleinman@arnoldporter.com

*Attorneys for Movant*
*QueerDoc, PLLC*

MOT. TO QUASH SUBPOENA DUCES TECUM
(No._____)

14