_____ FILED      _____ ENTERED
_____ LODGED      _____ RECEIVED

JUL 29 2025      RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| QueerDoc, PLLC, | No. 2:25-MC-00042-JNW |
| Movant, | QueerDoc, PLLC's Reply in Support of Motion to Quash Subpoena Duces Tecum |
| v. | NOTE ON MOTION CALENDAR: JULY 29, 2025 |
| U.S. Department of Justice, | |
| Respondent. | ORAL ARGUMENT REQUESTED |
| | **FILED UNDER SEAL** |

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

1    The Department of Justice's opposition ("Opposition" or "Opp'n") confirms that the

2  subpoena issued to QueerDoc (and at least 19 other providers) was issued for an improper purpose.

3  Specifically, the Opposition makes clear DOJ's true aim: to advance its legislative and policy goals

4  of ending access to gender affirming care. But an administrative subpoena is an investigative

5  tool—not a means to achieve a legislative or policy objective. As such, the Subpoena should be

6  quashed.

7                                              **ARGUMENT**

8    As QueerDoc made clear in its motion ("Motion" or "Mot."), DOJ's subpoena power is

9  limited to investigations conducted pursuant to a legitimate purpose. *U.S. v. Powell*, 379 U.S. 48,

10  57-58 (1964). In issuing subpoenas to more than 20 providers of gender affirming care, DOJ seeks

11  to achieve by subpoena its legislative and policy goals of ending access to this care. That is not a

12  valid purpose for a HIPAA subpoena. *See Consumer Fin. Prot. Bureau v. Accrediting Council for*

13  *Indep. Colls. and Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) ("[F]ederal courts stand guard against

14  abuses of the subpoena-enforcement processes.") (quoting *S.E.C. v. Arthur Young & Co.*, 584 F.2d

15  1018, 1024 & n.39) (D.C. Cir. 1978)).

16    A.    **The Subpoena Was Issued to Further the Government's Legislative and**
          **Policy Goals, Which Are Not Valid Purposes of a HIPAA Subpoena.**
17
       As QueerDoc stated previously, administrative subpoenas may only be issued for a
18
    "lawfully authorized purpose." *See e.g.*, *Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 445
19
    (9th Cir. 1994) (quoting *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208–09
20
    (1946)); *Solis v. Forever 21, Inc.*, 2013 WL 1319769, at *2 (C.D. Cal. Mar. 7, 2013) ("civil
21
    investigative subpoena" may be enforced only if sought "pursuant to a lawfully authorized
22
    legitimate purpose"). The sole legitimate purpose of a HIPAA subpoena is to "investigat[e] []
23
    federal healthcare offenses." *In re Subpoena Duces Tecum*, 228 F.3d 341, 343-44 (4th Cir. 2000).
24
    A subpoena issued for a purpose *other* than that which Congress has authorized is improper. *See*
25
    *U.S. v. Samuels, Kramer and Co.*, 712 F.2d 1342, 1347 (9th Cir. 1983) (subpoena issued in part to
26

REPLY IN SUPPORT OF MOT. TO
QUASH SUBPOENA DUCES TECUM – 1
(No. 2:25-MC-00042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

1  "close [movant's business] down" should be quashed as for improper purpose). *See also S.E.C. v.*

2  *Wheeling-Pittsburgh Steel Corp.*, 1980 WL 8157, at *10 (3d Cir. 1980) (administrative subpoena

3  must be "issued in good faith pursuit of a statutorily authorized purpose").

4      DOJ's attempt to recast this standard is misleading.  Although DOJ relies on the out-of-

5  circuit decision in *United States Immigration and Customs Enforcement v. Gomez*, 445 F. Supp.

6  3d 1213, 1216 (D. Colo. 2020), to argue that a subpoena is improper only if issued for an "unstated,

7  nefarious" purpose, Opp'n at 6, *Gomez* does not support such a narrow interpretation.  The court

8  in *Gomez* merely recognized that *one* example of an "improper purpose" could be "the government

9  using the subpoenas as a pretext for some unstated, nefarious, legally inappropriate reason." *Id.*

10  In no way did the Court suggest that is the *only* way a subpoena could be improper, nor did it

11  address whether the subpoena was issued for a reason inconsistent with an agency's authority.

12      Here, the Court need look no further than the government's own statements to discern its

13  true purpose—namely, the advancement of impermissible legislative and policy objectives.[1]  In

14  addition to the statements highlighted in the Motion at pp. 3-5, in the last three weeks, DOJ has

15  *continued* to issue statements that reinforce the policy motivations animating the subpoena served

16  on QueerDoc and other providers.

17      On July 9, 2025, DOJ announced that "it has sent more than 20 subpoenas to doctors and

18  clinics involved in performing transgender medical procedures on children." U.S. Dep't of Just.,

19  Off. of Pub. Affairs, "Department of Justice Subpoenas Doctors and Clinics Involved in

20  Performing Transgender Medical Procedures on Children," *available at* https://perma.cc/S2M8-

21  D8WW.  The Attorney General further declared that "[m]edical professionals and organizations

---

22      [1] Where the government's true purpose in issuing a subpoena is clear, the Court need not
23  accept at face value the government's explanation of its motives and may probe the government's
    stated purpose for issuing the subpoena. *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir.
24  1997) ("[A] court may inquire into such allegations of bad faith or harassment if the recipient of a
    subpoena makes an adequate showing that the agency is acting in bad faith or for an improper
25  purpose ....") (citing *Resolution Trust Corp. v. Frates*, 61 F.3d 962, 965 (D.C. Cir. 1995)).  At a
    minimum, this inquiry warrants discovery and/or an evidentiary hearing. *See Samuels*, 712 F.2d
26  at 1347.

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

1   that mutilated children in the service of a warped ideology will be held accountable by this

2   Department of Justice." *Id.* This press release—issued one day after QueerDoc filed the Motion—

3   exposes the government's true motive: to vilify providers and advance a political agenda. It

4   confirms that the Subpoena is not being used as a good-faith investigative tool, but rather as part

5   of a broader effort to chill and ultimately halt all gender affirming care.

6        The pattern continued on July 21, when the Attorney General celebrated a decision by

7   Children's National Hospital to end gender affirming care, stating, "At President Trump's

8   direction, @TheJusticeDept will continue enforcing the law against institutions like Children's

9   National that mutilate children under the guise of medical care. History will remember @POTUS

10  as a champion on this crucial issue." @AGPamBondi (July 21, 2025, 2:28 PM), *available at*

11  https://perma.cc/C579-FGPP. In linking the hospital's decision to DOJ's enforcement activities,

12  the Attorney General lays bare the Subpoena's true purpose: ending access to this care.[2]

13       Beyond DOJ's media statements, the Opposition itself confirms that DOJ's purported

14  investigation is pretextual. DOJ claims that the Attorney General has authorized investigations in

15  two areas: "(i) FDCA violations in relation to 'manufacturers and distributors engaged in

16  misbranding by making false claims about the on- or off-label use of' or unlawful 'promotion of

17  off-label uses of' certain drugs used in gender-related treatments of minors; and (ii) 'false claims

18  submitted to federal health care programs.'" Opp'n at 4. But neither area applies to QueerDoc,

19  which is not a "manufacturer" or a "distributor." As a provider, QueerDoc prescribes

20  medications—it does not "promote" them. Nor does QueerDoc participate in any health insurance

21  program or submit claims. *See* QueerDoc, "Our Pricing" (2025), *available at* https://perma

22

23

24       [2] DOJ mischaracterizes QueerDoc's argument. Opp'n at 6-7. QueerDoc is not arguing
    that the Subpoena was issued for an improper purpose simply because it believes gender affirming
25  care should be legal or is "proper." Rather, because DOJ's goal is to end the availability of gender
    affirming care—which is not a legitimate use of DOJ's subpoena power—the Subpoena was issued
26  for an improper purpose.

REPLY IN SUPPORT OF MOT. TO
QUASH SUBPOENA DUCES TECUM – 3
(No. 2:25-MC-00042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

.cc/9XHR-9LC7.[3]   That DOJ suggests that this creates a basis to investigate QueerDoc only highlights the lack of a legitimate purpose in issuing the subpoena.[4]

The Opposition's discussion of Justice Thomas's concurrence in *United States v. Skrmetti*, 605 U.S. _, 145 S. Ct. 1816, 1841 (June 18, 2025), further underscores its improper purpose.  DOJ argues that "the Supreme Court recently held that *eliminating* gender-related pharmaceutical treatments of minors is a rational governmental purpose that is not improper at all."  Opp'n at 6 (citing *Skrmetti*, 145 S. Ct. at 1843-49) (emphasis added).  But as DOJ acknowledges, *Skrmetti* involved a state's legislative effort to ban gender affirming care.  Opp'n. at 6-7.  Even assuming *arguendo* that banning gender affirming care for minors is a valid *legislative* purpose, a HIPAA subpoena—a tool to investigate potential healthcare fraud—cannot be used to achieve the same goals. *See also* Opp'n at 7-8.

The government's motivations are clear: it seeks to advance the legislative and policy goals of ending access to gender affirming care.  But the subpoena power is not a legislative one.  The Subpoena should be quashed in its entirety.

### B.    DOJ Fails to Acknowledge the Undue Burden the Subpoena Places on QueerDoc.

Instead of meaningfully engaging with QueerDoc's arguments regarding undue breadth and burden, DOJ simply asserts that administrative subpoenas may include broad requests and, because QueerDoc provides gender affirming care, the Subpoena's requests, "which seek records related to the provision of those services" are valid.  Opp'n at 9.  That is incorrect.

In each case upon which DOJ relies, the subpoenas were grounded in a legitimate enforcement interest, and the relevant agency was able to articulate a reasonable connection

---

[3] Although it will provide patients with a Superbill to provide to their insurance, *id.*, QueerDoc itself does not submit claims to insurance.

[4] Moreover, as explained in QueerDoc's Motion, the Subpoena raises constitutional issues. *See Washington v. Trump*, 768 F. Supp. 3d 1239, 1250 (W.D. Wash. 2025) (finding large portions of the January 28 Order, which targets providers of gender affirming care, violate the Equal Protection Clause).

**Arnold & Porter**
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

1  between their legitimate investigation and the requested information. Here, by contrast, DOJ has

2  failed to articulate any connection between the information sought and its purported investigation

3  beyond its assertion that QueerDoc is a "prominent" provider of gender affirming care. Ramer

4  Decl. ¶ 7. This moves the Subpoena squarely into the territory of an improper "fishing expedition"

5  that cannot be sustained. *Garner*, 126 F.3d at 1146 (citing *Peters v. U.S.*, 853 F.2d 692, 700 ("An

6  administrative subpoena . . . may not be so broad so to be in the nature of a 'fishing expedition.'")).

7         DOJ's attempt to justify the Subpoena's relevance fares no better. DOJ contends that the

8  FDCA "of course relate[s] to how [QueerDoc's] providers billed for medical services to prescribe

9  or deliver, *inter alia*, the pharmaceuticals in question." Opp'n at 9. But the FDCA governs the

10  misbranding and adulteration of drugs—not provider billing—and DOJ fails to explain how

11  QueerDoc's billing practices could implicate the FDCA.[5]

12         Finally, DOJ suggests QueerDoc failed to "meaningfully [meet] and confer." Opp'n at 9.

13  Nothing in Section 3486 imposes such a requirement, which makes sense, especially where, as

14  here, the Subpoena is for an improper purpose and should never have been issued.

15      **C.**    **DOJ Overstates the Reach of Section 3486.**

16         DOJ misstates the purpose of Section 3486, arguing that "Congress enacted the provisions

17  as part of HIPAA *specifically to allow the Government to obtain HIPAA-protected health*

18  *information of patients in health care investigations*." Opp'n at 10 (emphasis added). Not so.

19  Section 3486 authorizes DOJ to investigate certain healthcare offenses, but Congress did *not* grant

20  DOJ unfettered access to protected health information. Rather, disclosures are permitted only in

21  narrowly defined circumstances and are subject to HIPAA's privacy safeguards. 18 U.S.C. §

22  3486(e). Law enforcement requests must be relevant, specific and limited in scope, and disclosures

23  must be limited to the minimum amount of information necessary to accomplish the purpose of

24  the disclosure. 45 C.F.R. §§ 164.502(b), §164.512(f), 164.514(d); *see also* 65 Fed. Reg. 82462,

25

26       [5] Moreover, the FDCA does not regulate the practice of medicine. *U.S. v. Evers*, 643 F.2d 1043, 1048 (5th Cir. 1981).

REPLY IN SUPPORT OF MOT. TO
QUASH SUBPOENA DUCES TECUM – 5
(No. 2:25-MC-00042-JNW)

**Arnold & Porter**
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

824825 (Dec. 28, 2000). Not only does the Opposition ignore these principles, the Subpoena's requests for patient records are overbroad, nearly unlimited in scope and irrelevant to DOJ's stated purpose. *See* Ex. 3. By framing Section 3486 as a blanket authorization to seek patient records, DOJ disregards HIPAA's foundational principle: privacy is the default, not the exception.

Accordingly, DOJ's reliance on *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000), is misplaced. There the government was able to show that the patient records sought directly supported allegations of a medical practice's billing misconduct. *Id.* at 350. In contrast, DOJ here seeks records for nearly every QueerDoc patient—without attempting to demonstrate any connection to alleged wrongdoing. Opp'n at 1-2. DOJ also distorts *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004). Although Judge Posner noted in dicta that the government may have been able to obtain patient records under a HIPAA subpoena, he cautioned that, "[e]ven if there was no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy." *Id.* at 929. He emphasized the sensitive nature of these records and the importance of privacy protections, even in a federal investigation, and affirmed the quashal of the subpoena as unduly burdensome and intrusive. *Id.* at 928-929.

Finally, DOJ's reliance on Section 3486's confidentiality provisions does not replace the need for judicial scrutiny. Statutory safeguards cannot legitimize a subpoena that is facially overbroad, issued for an improper purpose, targets highly sensitive medical information, and lacks a clear, lawful nexus to a legitimate enforcement objective. DOJ's stated purpose of investigating FDCA violations—a pretext for its true purpose, which is to end access to gender affirming care—cannot justify its request for patient records.

## CONCLUSION

For the reasons discussed herein, the Subpoena should be quashed.

\*     \*     \*

The undersigned certifies that this motion contains 2,100 words, in compliance with LCR 7(e)(2).

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

1   DATED this 29th day of July, 2025.

2

3   By:   *s/*

Harry H. Schneider, Jr., WSBA No. 9404
4   David B. Robbins,  WSBA No. 13628
Shireen Lankarani, WSBA No. 61792
5   **Perkins Coie LLP**
1301 Second Avenue Suite 4200
6   Seattle, Washington 98101
Telephone: (206) 359-8000
7   Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
8   DRobbins@perkinscoie.com
SLankarani@perkinscoie.com
9
Paula R. Ramer
10  *(pro hac vice application forthcoming)*
Marcus A. Asner
11  *(pro hac vice application forthcoming)*
Brittney Nagle
12  *(pro hac vice application forthcoming)*
**Arnold & Porter Kaye Scholer LLP**
13  250 West 55th Street
New York, NY 10019
14  Telephone: (212) 836-8000
Facsimile: (212) 836-8689
15  Paula.Ramer@arnoldporter.com
Marcus.Asner@arnoldporter.com
16  Bee.Nagle@arnoldporter.com

17

18

19

20

21

22

23

24

25

26

Jaclyn Machometa
*(pro hac vice application forthcoming)*
**Arnold & Porter Kaye Scholer LLP**
500 Boylston Street, 20th Floor
Boston, MA 02116
Telephone: (617) 351-8050
Facsimile: (617) 226-9199
Jaclyn.Machometa@arnoldporter.com

Samuel D. Kleinman
*(pro hac vice application forthcoming)*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Sam.Kleinman@arnoldporter.com

*Attorneys for Movant*
*QueerDoc, PLLC*

REPLY IN SUPPORT OF MOT. TO
QUASH SUBPOENA DUCES TECUM – 7
(No. 2:25-MC-00042-JNW)