The Honorable Jamal N. Whitehead

FILED ENTERED
LODGED RECEIVED

SEP 26 2025 LS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QUEERDOC, PLLC,

*Movant,*

*v.*

U.S. DEPARTMENT OF JUSTICE,

*Respondent.*

Case No.: 2:25-MC-00042-JNW

DECLARATION OF GOVERNMENT ATTORNEY ALLAN GORDUS

I, Allan Gordus, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

GENERAL BACKGROUND

1. I am an attorney at the Consumer Protection Branch ("CPB")[1] of the United States Department of Justice ("DOJ") and have been so employed since 2000. Since joining CPB, I have investigated and prosecuted federal health care-related offenses, including violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"), health care fraud, mail fraud, wire fraud, money laundering and conspiracy. *See, e.g.*, *United States v. W. Scott*

[1] The Consumer Protection Branch was formerly known as the "Office of Consumer Litigation."



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

*Harkonen*, Case No. 08-CR-0164-MHP (N.D. Cal. 2008); *United States v. Karen Ann Turner*, Case No. 17-CR-0109 (W.D.N.C. 2017); *United States v. Avanos Medical, Inc.*, Case No. 21-CR-0307-E (N.D. Tex. 2021) attached as Exhibit 1. As part of my work at CPB, I have participated in all phases of criminal investigations and prosecutions of violations of federal law.

2. I make this Declaration in opposition to QueerDoc's Motion to Quash a federal administrative subpoena issued pursuant to 18 U.S.C. § 3486 by the United States Attorney General's delegate in the furtherance of an investigation of federal health care offenses (as defined by 18 U.S.C. § 24), as specified on the subpoena, in which other DOJ personnel are currently engaged.

3. The facts in this Declaration come from my personal observations, my training and experience, and information obtained from other government personnel. This Declaration is intended to demonstrate that the administrative subpoena was issued in the furtherance of a nationwide federal investigation into potential systemic violations of federal law and that the records and other things the subpoena seeks are relevant to that investigation. This Declaration does not set forth all my knowledge about this matter.

## LEGAL BACKGROUND

### FDCA VIOLATIONS CAN BE FEDERAL HEALTH CARE OFFENSES

4. The overriding purpose of the FDCA is to protect the public health. *United States v. Article of Drug ... Bacto-Unidisk*, 394 U.S. 784, 798 (1969). The FDCA's purpose should "infuse construction of the [FDCA]" so that courts give the FDCA a liberal construction that furthers protection of the public health including in criminal enforcement of the FDCA. *Id. United States v. Dotterweich*, 320 U.S. 277, 280 (1943); *See also United States v. Park*, 421 U.S. 658, 672–73 (1975). This consideration applies even more strongly where the government seeks to enforce the FDCA to protect the health of children.

5. A "Federal health care offense" for purposes of a subpoena issued under 18 U.S.C. § 3486 is defined by 18 U.S.C. § 24(a) as "a violation of, or a criminal conspiracy to



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

violate … section 301 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331) … if the violation or conspiracy relates to a health care benefit program." 18 U.S.C. § 24(a)(2). The statute defines "health care benefit program" to mean "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b). A subpoena issued under section 3486 (commonly referred to as a "HIPAA subpoena") may be used to investigate both violations of the FDCA as well as conspiracies to violate to the FDCA, if the violation or conspiracy relates to products or services that might ultimately be paid for by either a private or public health insurance program.

**FDA'S APPROVAL OF DRUGS**

6. The FDCA regulates the development, manufacturing and distribution of drugs in the United States. For a "new drug" to enter interstate commerce, the manufacturer must first demonstrate to the United States Food and Drug Administration ("FDA") that the drug is both safe and effective for each of its intended uses. 21 U.S.C. §§ 331(d), 355(a). The introduction into interstate commerce of an unapproved new drug violates the FDCA. 21 U.S.C. § 331(d).

7. A drug manufacturer obtains FDA approval for a new drug through a new drug application ("NDA") that demonstrates that its drug is safe and effective for each of its intended uses. 21 U.S.C. § 355(a). As part of the approval process, FDA reviews the proposed labeling for the drug in the NDA which must include adequate directions for how to use the drug for each of its intended uses. 21 U.S.C. § 352(f); 21 C.F.R. § 201.5. When FDA approves a drug, FDA approves it as safe and effective for the particular use or uses in the NDA. Similarly, as part of its approval, FDA approves the labeling in the NDA as having adequate directions for the particular use or uses in the NDA. FDA's approval of a drug does not mean that the drug is safe and effective for unapproved uses or that the drug has adequate directions for unapproved uses.



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

8. While it is possible for doctors to prescribe an approved drug for an unapproved use, prescriptions for unapproved uses may involve violations of the FDCA.

**MISBRANDING OF DRUGS PRESCRIBED FOR UNAPPROVED USES THROUGH ILLEGAL LABELING**

9. A drug is misbranded if its labeling does not have adequate directions for the use of the drug. 21 U.S.C. § 352(f). FDA-approved labeling contains directions only for the drug's approved uses. If a drug manufacturer or other person distributes an approved drug for an unapproved use, the manufacturer or other person could possibly be charged with misbranding the drug or distributing a misbranded drug for the distribution of the drug with labeling that does not have adequate directions for its intended uses.[2] 21 U.S.C. §§ 331(a), 331(b), 331(c), 331(k), and 352(f)(1). CPB has participated in successful prosecutions of drug manufacturers for such illegal conduct. *See, e.g.*, *United States v. Pharmacia & Upjohn Co.*, Case No. 09-CR-10258-DPW (D. Mass. 2009); *United States v. Eli Lilly & Co.*, Case No. 09-CR-00020-RK (E.D. Pa. 2009) attached as Exhibit 2.

10. A drug can also be misbranded if its labeling is false or misleading in any particular. 21 U.S.C. § 352(a).

11. Under the FDCA, drug labeling is broadly defined as any "written, printed, or graphic matter ... *accompanying*" the drug. 21 U.S.C. § 321(m) (emphasis added). The term "accompanying" is interpreted broadly and includes materials that are separated from the drug but nonetheless related to it and includes any material that supplements, explains, or is designed for use with the drug. *See* 21 U.S.C. § 321(m); 21 C.F.R. § 1.3(a); *Kordel v. United States*, 335 U.S. 345 (1948); *United States v. Urbuteit*, 335 U.S. 355 (1948); *United States v. 47 Bottles ... Jenasol RJ Formula 60*, 320 F.2d 564, 569 (3d Cir. 1963) (literature was labeling where it was shipped by company to sales agent and then stored in the agent's bedroom closet: "[I]t cannot be said that ...the Court promulgated or intended to promulgate a requirement that there be an

---

[2] As noted above, it is possible for doctors to prescribe an approved drug for an unapproved use without violating the FDCA.



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

actual use in order that the literature constitute labeling."). Labeling can include promotional materials, advertisements, brochures, flyers, instruction sheets, posters, and similar materials.

12. If a drug manufacturer or other person distributes (or causes the distribution of) an approved drug with false or misleading labeling for an unapproved use, the manufacturer or other person could possibly be charged with misbranding the drug or distributing a misbranded drug. 21 U.S.C. §§ 331(a), 331(b), 331(c), 331(k), and 352(a). CPB has participated in successful prosecutions of manufacturers for false and misleading labeling. *See, e.g., United States v. Avanos Medical, Inc.*, Case No. 21-CR-0307-E (N.D. Tex. 2021) (deferred prosecution agreement for false and misleading labeling for medical device) attached as Exhibit 1.

ILLEGAL DISTRIBUTION OF AN UNAPPROVED NEW DRUG

13. A "new drug" is any drug that is "not generally recognized, among [qualified] experts . . . as safe and effective for use under the conditions prescribed, recommended, or suggested in the *labeling* thereof … ." 21 U.S.C. § 321(p)(1) (emphasis added).

14. If a drug manufacturer or other person distributes (or causes the distribution of) an approved drug for an unapproved use with labeling for that unapproved use, the manufacturer or other person could possibly be charged with distributing an unapproved new drug in violation of the FDCA. 21 U.S.C. § 331(d).

INTENT FOR FDCA CRIMES

15. A violation of 21 U.S.C. § 331 is a federal criminal offense that can be punished as a strict liability misdemeanor without any proof of criminal intent. *See Park*, 421 U.S. at 672–73; *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 91 (1964). Through its strict liability misdemeanor provision, the FDCA imposes rigorous criminal accountability on companies and individuals involved with drugs that affect the health of consumers in circumstances where consumers realistically cannot protect themselves. *See Weisenfeld*, 376 U.S. at 91; *Dotterweich*, 320 U.S. at 280–81. This rigorous accountability applies even more strongly when the consumers



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

are children. Consequently, any violation of section 331, including the causing of any prohibited act listed in section 331, is a federal crime even in the absence of any criminal intent.

16. A felony FDCA violation is the same as a misdemeanor FDCA violation with the addition of an intent to defraud or mislead. 21 U.S.C. § 333(a). Evidence of an intent to defraud or mislead a government agency or some other third-party, such as a patient or an insurance company, in connection with an FDCA violation can be enough to prove a felony FDCA violation. Evidence of an intent to defraud or mislead can include taking steps to avoid detection of the illegal conduct.

## THE DRUGS AT ISSUE IN THIS INVESTIGATION

17. This investigation is focusing on prescription drugs increasingly used in gender-related care for children and adolescents suffering from a recognized mental disorder known as gender identity disorder or, as the most recent version of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS refers to it, gender dysphoria. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 511–12 (5th ed. Text Revision 2025). Included in this group of prescription drugs are: (1) drugs used to suppress the production of sex hormones to delay puberty—the most common being gonadotropin-releasing hormone agonists ("GnRH agonists"), commonly referred to as "puberty blockers;" and (2) cross-sex hormones meant to induce physical changes to alter the child's secondary sexual characteristics to resemble those typically seen in the opposite sex and less like the individual's biological sex. Testosterone, a Schedule III controlled substance under the Controlled Substances Act, is included in this latter group.

18. FDA has not determined any of these drugs to be either safe or effective for the treatment of gender dysphoria. FDA has not approved any of these prescription drugs for the treatment of gender dysphoria or any other psychiatric disorder. While these drugs are FDA-approved for other indications (e.g., precocious puberty, prostate cancer, hypogonadism, etc.), there has been no NDA approved by FDA that establishes the safety and efficacy of these drugs for use in minors with gender dysphoria. As explained above, introducing such a "new drug" into



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

interstate commerce for an unapproved use is potentially unlawful. To the extent these drugs are marketed or promoted for treating gender dysphoria in minors, they could constitute unapproved new drugs under federal law, and their distribution for that unapproved use could violate the FDCA and be a federal crime.

19. The child consumers of these powerful drugs may be significantly victimized by the bypassing of the drug approval process. The United States Department of Health and Human Services ("HHS"), of which FDA is a component agency, has determined that the evidence for the safety and efficacy of these drugs for the treatment of gender dysphoria in minors is weak. *See* U.S. DEP'T OF HEALTH & HUMAN SVCS., TREATMENT FOR PEDIATRIC GENDER DYSPHORIA, REVIEW OF EVIDENCE AND BEST PRACTICES (May 2025) (available at https://opa.hhs.gov/gender-dysphoria-report). Specifically, the United States government has found that some of the drugs under investigation here "carry risk of significant harms including infertility/sterility, sexual dysfunction, impaired bone density accrual, adverse cognitive impacts, cardiovascular disease and metabolic disorders, psychiatric disorders . . . and regret." *Id.* at 10. This is compounded by the fact that HHS has also determined that "the overall quality of [scientific] evidence concerning the effects of any intervention on psychological outcomes, quality of life, regret, or long-term health, is **very low**." *Id.* at 13 (emphasis added). This is consistent with the other international systematic reviews of the evidence on the use of the drugs to treat minors with gender dysphoria, which have led to the restriction of such hormonal interventions in countries across the world, including the United Kingdom, Sweden, Norway, Denmark, Brazil and Chile. *Id.* at 60-61.

20. Some of these drugs, including puberty blockers, are not administered orally. Rather, they are typically administered by injection by a medical professional or through an outpatient surgical procedure to implant the drug. Puberty blockers are typically implants or injectables that require a physician or nurse for administration in a clinic that must purchase, store, and administer the drug, placing them in the chain of distribution of the drug.

## RELEVANT FACTS ABOUT THE SUBPOENAED PETITIONER, QUEERDOC



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

21. From information provided by whistleblowers and experts, there may be potential violations of federal law in gender-related treatments for minors including allegations of: the intentional use of incorrect diagnosis codes to fraudulently secure insurance coverage for gender-related treatments; misleading and deceiving child patients and their parents about the risks of gender-related treatments. Based on QueerDoc's website, it appears that QueerDoc may be engaging in such violations of federal law.

22. The investigative team identified the Movant, QueerDoc, as a telemedicine clinic that explicitly holds itself out in marketing and promotional materials (including through a website) as specializing in the treatment of children and adolescents who suffer from gender dysphoria, including by providing puberty blockers and cross-sex hormones to minors for these unapproved uses. QueerDoc prominently advertises these services under "Youth Gender Care," "QueerDoc Does Adolescent Care!," and related webpages. *See, e.g., Youth Gender Care*, https://queerdoc.com/adolescent-gender-care/ ("QueerDoc provides gender affirming care including puberty blockers and hormone therapy to adolescent patients."); https://queerdoc.com/queerdoc-does-adolescent-care/ ("There is no lower age limit for our patients, and QueerDoc prescribes blockers and hormones when appropriate.").

23. Much of QueerDoc's website may legally qualify as drug labeling under the FDCA, including a page entitled "Puberty Blockers FAQ" that gives written explanations of how the drugs work, what the risks and benefits are, and how they are used—that is, information that supplements and explains the drug. *See Puberty Blockers FAQ*, https://queerdoc.com/puberty-blockers-faq/. The information on these websites is potentially false and misleading labeling that renders the drugs misbranded. For example, QueerDoc's Youth Gender Care webpage states that "Puberty blockers are an option to put a 'pause button' on puberty and are completely reversible." This assertion that all effects of puberty blockers are fully reversible is potentially misleading. HHS and other clinical sources have stated that some effects are uncertain or



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

possibly permanent. Similar statements about the reversibility of hormone drug effects on QueerDoc's website are likewise potentially false or misleading.

24. There is evidence that QueerDoc may have an intent to defraud and mislead related to potential violations of the FDCA. QueerDoc's website explicitly states that—as a matter of practice—it uses false diagnosis codes when prescribing for the unapproved use of treating gender dysphoria in order to disguise or hide the true purpose of the prescription to treat gender dysphoria, stating: "We usually order prescriptions under the diagnosis of 'endocrine disorder' not 'gender dysphoria,' but some [insurance] plans may require paperwork which requires us to disclose gender related treatments. Some plans automatically reject payment for 'gender-incongruent' treatments." *See Pharmacy Options*, https://queerdoc.com/pharmacy-options/. In addition to potentially providing the intent to defraud or mislead required for an FDCA felony, this practice may also violate other federal criminal statutes such as 18 U.S.C. § 1035 (false statements relating to health care matters) and 18 U.S.C. § 1347 (health care fraud). QueerDoc's website indicates that it may be prescribing drugs described herein to children for unapproved uses without proper assessment, disclosures and informed consent, and with minor patients potentially receiving prescriptions after a single telehealth visit.

25. A report by NBC News in August 2024, states that QueerDoc's principal, Dr. Crystal Beal, said that she "consider[s] [the QueerDoc] practice a form of civil disobedience" and that she "feel[s] compelled to defy anti-trans laws" by providing care even in states that have enacted laws making the provision of such care unlawful. Emma Davis, *Death Threats, Legal Risk and Backlogs Weigh on Clinicians Treating Trans Minors*, NBC News (Aug. 28, 2024), https://www.nbcnews.com/nbc-out/out-news/trans-minors-treatment-clinicians-laws-bans-rcna164515.

## THE SUBPOENA SPECIFICATIONS SEEK INFORMATION RELEVANT TO THE INVESTIGATION

26. The fifteen requests in the investigative HIPAA subpoena the Attorney General (through her delegate, the Assistant Attorney General for the Civil Division) issued to QueerDoc



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

seek to further the investigation described above. The requests can be broadly broken down into four main categories: (1) requests related to personnel and corporate oversight (Request 1); (2) requests related to billing, coding, and reimbursement practices (Requests 2–6); (3) requests related to the practice's relationships with drug manufacturers, distributors, and pharmacies (Requests 7–10); and (4) requests regarding clinical practices and drug safety (Requests 11–15). All of the subpoenaed records and documents are relevant to the federal health care investigation described herein. *See* 18 U.S.C. § 3486(a)(1).

27. Request 1 seeks information to identify who had authority to direct prescribing, billing, or marketing practices to determine liability. Under strict liability doctrines, including the responsible corporate officer doctrine, officers and responsible personnel can be held criminally liable for FDCA violations even without direct participation. Personnel files also show financial incentives, disciplinary history, and/or training which can establish knowledge and intent.

28. The requests in the second group (regarding billing, coding, and reimbursement practices) are necessary to determine whether the clinic disguised treatment for gender-related mental disorders as another, physical illness (*e.g.*, endocrine disorder) to disguise or hide potential FDCA violations and potentially secure health care benefit program reimbursements through fraud. Such practices are especially important to demonstrate an "intent to defraud or mislead" under 21 U.S.C. § 333(a)(2) if the clinic misrepresented the intended use of the drugs. Moreover, training materials and internal discussions can reveal whether improper coding was a deliberate strategy.

29. The third group of requests (relating to relationships with drug manufacturers, distributors, and pharmacies) seeks evidence of an intent to market or promote drugs for unapproved uses in violation of the FDCA. If QueerDoc, or one of its affiliated health care providers, received promotional materials, "scientific exchange information," or payments to encourage prescribing of puberty blockers or cross-sex hormones, such information could support a FDCA theory (including conspiracy) involving the illegal misbranding of drugs or the



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

illegal distribution of misbranded drugs or unapproved new drugs. Similarly, information regarding financial arrangements (consulting agreements, sponsorships, speaking honoraria) may suggest improper influence to reinforce a showing of an intent to misbrand the drugs, including with an intent to defraud or mislead.

30. The final group of requests (relating to patient-level clinical practices and drug safety) will permit the United States to evaluate the scope of possible prescribing for unapproved uses (including the number and age range of patients treated), and consistency of diagnoses. It also establishes the scope of interstate distribution and the scale of potential FDCA violations. Linking each patient's clinical record to corresponding billing and insurance claims can demonstrate whether diagnoses were miscoded, which can prove fraudulent intent. Documentation of clinical justification, informed consent, and disclosure of unapproved use is key to assessing whether the clinic (and/or potential co-conspirators) concealed or downplayed risks associated with the unapproved use of the drugs. Absence or minimization of such warnings could establish an intent to mislead. Patient charts also typically capture adverse outcomes, side effects, and complications of drug use. By reviewing multiple patient records, the review may reveal systemic use of the same masking codes, fraudulent informed consent documents, or other possible criminal conduct. This enables investigators to distinguish between mere errors and an institutionalized practice. Finally, providing patient records including patient identities can provide essential investigative leads. Parents may be witnesses about what disclosures were made. Patients (depending on age and circumstances) may provide information about the informed consent process, side effects, or potentially false or misleading information about the drugs conveyed during treatment. Health benefit programs tied to identified patients could provide additional evidence on potentially illegal distribution of the drugs for unapproved uses. In sum, without this information, the government cannot fully determine the scope of any potential violations, identify patterns of misbranding or fraudulent billing, or assess whether the



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218

conduct was undertaken with intent to defraud or mislead, as required for a felony FDCA violation under 21 U.S.C. § 333(a)(2).

### GOVERNMENT INVESTIGATIVE RESOURCES

31. This is a substantial national investigation of potential FDCA violations related to the unapproved use of drugs in gender-related care as reflected in the substantial government resources assigned to it. This matter is being handled by several veteran, career prosecutors with many decades of experience in health care fraud and FDCA enforcement, supported by a team of document analysts and other forensic specialists. Multiple FBI agents and analysts are assigned to assist with various field activities and are employing advanced data analytics to identify prescribing and reimbursement patterns and potential FDCA violations related to the unapproved use of the drugs. The scope and coordination of these efforts reflect the seriousness with which the government is pursuing potential violations of federal law.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 26th day of September, 2025.

ALLAN GORDUS
Assistant Director
Consumer Protection Branch
United States Department of Justice



United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
(202) 353-4218