————— FILED          ————— ENTERED
————— LODGED         ————— RECEIVED

SEP 2 6 2025  LS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

# EXHIBIT 2

## TO DECLARATION OF ALLAN GORDUS
### (FOLDER 3)

7b(f)) against Pfizer under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. §

1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the

Covered Conduct, except as reserved in Paragraph 7 (concerning excluded claims), below, and

as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any

statutory obligations to exclude Pfizer from the Medicare, Medicaid and other Federal health

care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered

Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities

or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7,

below.

     5.     In consideration of the obligations of Pfizer set forth in this Agreement and,

conditioned upon Pfizer's payment in full of the Settlement Amount, TMA agrees to release and

refrain from instituting, directing, or maintaining any administrative action seeking exclusion

from the TRICARE Program against Pfizer, under 32 C.F.R. § 199.9 for the Covered Conduct,

except as reserved in Paragraph 7 below (concerning excluded claims), and as reserved in this

Paragraph. TMA expressly reserves authority to exclude Pfizer under 32 C.F.R. §§

199.9(f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii), based upon the Covered Conduct. Nothing in this

Paragraph precludes TMA or the TRICARE Program from taking action against entities or

persons, or for conduct and practices, for which claims have been reserved in Paragraph 7,

below.

     6.     In consideration of the obligations of Pfizer set forth in this Agreement and

conditioned upon Pfizer's full payment of the Settlement Amount, OPM agrees to release and

11

refrain from instituting, directing, or maintaining any administrative action against Pfizer under

5 U.S.C. § 8902a or 5 C.F.R. Part 970 for the Covered Conduct, except as reserved in Paragraph

7 below (concerning excluded claims), except if required by 5 U.S.C. § 8902a(b). Nothing in

this Paragraph precludes OPM from taking action against entities or persons, or for conduct and

practices, for which claims have been reserved in Paragraph 7 below.

   7.  Notwithstanding any term of this Agreement, specifically reserved and excluded

from the scope and terms of this Agreement as to any entity or person (including Pfizer and the

Relators) are the following claims of the United States:

     (a)  Any civil, criminal, or administrative liability arising under Title 26, U.S.
Code (Internal Revenue Code);

     (b)  Any criminal liability;

     (c)  Except as explicitly stated in this Agreement, any administrative liability,
including mandatory exclusion from Federal health care programs;

     (d)  Any liability to the United States (or its agencies) for any conduct other
than the Covered Conduct;

     (e)  Any liability based upon such obligations as are created by this
Agreement;

     (f)  Any liability for express or implied warranty claims or other claims for
defective or deficient products and services, including quality of goods
and services;

(g)  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

(h)  Any liability for failure to deliver items or services due; or

(i)  Any liability of individuals (including current or former directors, officers, employees, or agents of Pfizer) who receive written notification that they are the target of a criminal investigation, are criminally indicted or charged, or are convicted, or who enter into a criminal plea agreement.

8.  Each Relator, and his/her respective heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement and the allocation of amounts to their respective claims as set forth in Paragraph 12 are fair, adequate and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and expressly waive the opportunity for a hearing on any objection to this Agreement pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon payment by the United States of the amounts set forth in Paragraph 1(c), above, Relators for themselves individually, and for their heirs, successors, agents, and assigns, fully and finally release, waive, and forever discharge the United States, its officers, agents, and employees, from any claims arising from or related to 31 U.S.C. § 3730 for any claims arising from the Covered Conduct and/or for any claims in the Civil Actions; and from any other claims for a share of the Settlement Amount, and in full settlement of any claims Relators may have against the United States under this Agreement. This Agreement does not resolve or in any manner affect any claims the United States has or may have against the

Relators arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

9.      Conditioned upon the United States' receipt of the payments described in Paragraph 1(a), above, Relators, for themselves, and for their respective heirs, successors, attorneys, agents, and assigns, agree to release Pfizer, its predecessors, subsidiaries, successors and assigns and its current and former directors, officers, agents, and employees, from any liability to Relators arising from the allegations in Relators' Civil Actions that are being resolved pursuant to this Agreement by payment by Pfizer of the Federal Settlement Amount for the Covered Conduct. Relators' release of Pfizer does not extend to allegations in their Civil Actions that are not within the Covered Conduct, including Relators' claims for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d), Relators' claims under 31 U.S.C. § 3730(h), Relators claims for a Relator's Share under the Medicaid State Settlement Agreements, nor to any other claims Relators may have or had against Pfizer that are not expressly resolved herein.

10.      Pfizer waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by

the United States concerning the characterization of the Settlement Amount for purposes of the

Internal Revenue laws, Title 26 of the United States Code.

11.    Pfizer fully and finally releases the United States, its agencies, employees,

servants, and agents from any claims (including attorneys' fees, costs, and expenses of every

kind and however denominated) which Pfizer has asserted, could have asserted, or may assert in

the future against the United States, its agencies, employees, servants, and agents, related to the

Covered Conduct or arising from the United States' investigation and prosecution of the Civil

Actions and the Criminal Action.

12.    Should this Agreement be challenged by any person as not fair, adequate or

reasonable pursuant to 31 U.S.C. § 3730(c)(2)(B), Pfizer agrees that it will take all reasonable

and necessary steps to defend this Agreement.  Pfizer and the United States agree that the

following allocation of the Settlement Amount to the Covered Conduct identified in Preamble

Paragraph (F) is fair, adequate and reasonable under the circumstances:

> (1)    For the Covered Conduct referenced in Preamble paragraph F(1)
> regarding Bextra: $502,524,316;
>
> (2)    For the Covered Conduct referenced in Preamble paragraph F(2)
> regarding Geodon: $301,462,065;
>
> (3)    For the Covered Conduct referenced in Preamble paragraph F(3)
> regarding Zyvox: $97,945,019;
>
> (4)    For the Covered Conduct referenced in Preamble paragraph F(4)
> regarding Lyrica: $48,223,886
>
> (5)    For the Covered Conduct referenced in Preamble paragraph F(5)
> regarding other specified kickbacks:  $49,844,714.

13.     In consideration of the obligations of the Relators set forth in this Agreement,
Pfizer, on behalf of itself, its predecessors, and its current and former divisions, parents,
subsidiaries, agents, successors, assigns, and their current and former directors, officers and
employees, fully and finally release, waive, and forever discharge the Relators and their
respective heirs, successors, assigns, agents, and attorneys from any claims or allegations Pfizer
has asserted or could have asserted, arising from the Covered Conduct, except as they relate to a
statutory claim by Relators for reasonable attorneys' fees and costs pursuant to 31 U.S.C. §
3730(d) and as to any claims Relators may have under 31 U.S.C. § 3730(h).

14.     The Settlement Amount shall not be decreased as a result of the denial of claims
for payment now being withheld from payment by any Medicare carrier or intermediary or any
state payer, related to the Covered Conduct; and Pfizer agrees not to resubmit to any Medicare
carrier or intermediary or any state payer any previously denied claims related to the Covered
Conduct, and agrees not to appeal any such denials of claims.

15.     Pfizer agrees to the following:

(a)     <u>Unallowable Costs Defined</u>:  that all costs (as defined in the Federal
Acquisition Regulations (FAR) 48 C.F.R. § 31.205-47 and in Titles XVIII and XIX of the Social
Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official
program directives promulgated thereunder) incurred by or on behalf of Pfizer, its present or
former officers, directors, employees, shareholders, and agents in connection with the following
shall be "Unallowable Costs" on government contracts and under the Medicare Program,
Medicaid Program, TRICARE Program, and FEHBP:

16

(1) the matters covered by this Agreement and the related plea agreement;

(2) the United States' audit and civil and criminal investigation of the matters covered by this Agreement;

(3) Pfizer's investigation, defense, and any corrective actions undertaken in response to the United States' audit and civil and criminal investigation in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement, the plea agreement, and the Medicaid State Settlement Agreements;

(5) the payments Pfizer makes to the United States or any State pursuant to this Agreement, the plea agreement, or the Medicaid State Settlement Agreements and any payments that Pfizer may make to Relators (including costs and attorneys' fees);

(6) the negotiation of, and the obligations undertaken pursuant to the CIA to:

    (i) retain an independent review organization and outside reviewer to perform annual reviews as described in Section III of the CIA; and

    (ii) prepare and submit reports to the OIG-HHS. However, nothing in this paragraph 15(a)(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Pfizer.

17

(All costs described or set forth in this paragraph 15(a) are

hereafter "Unallowable Costs")

      (b)    Future Treatment of Unallowable Costs:  These Unallowable Costs shall

be separately determined and accounted for by Pfizer, and Pfizer shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid Program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Pfizer or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      (c)    Treatment of Unallowable Costs Previously Submitted for Payment:

Pfizer further agrees that within 90 days of the Effective Date of this Agreement, it shall identify

to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and

Medicaid, and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any State Medicaid Program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by Pfizer or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information reports, or

payment requests, even if already settled, be adjusted to account for the effect of the inclusion of

the Unallowable Costs.  Pfizer agrees that the United States, at a minimum, shall be entitled to

recoup from Pfizer any overpayment plus applicable interest and penalties as a result of the

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports,

cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Pfizer or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Pfizer's or any of its subsidiaries' or affiliates' cost reports, cost statements, or information reports.

(d)    Nothing in this Agreement shall constitute a waiver of the rights of the United States to examine or reexamine Pfizer's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

16.    Pfizer agrees to cooperate fully and truthfully with the United States' investigation relating to the Covered Conduct of individuals and entities not released in this Agreement. Upon reasonable notice, Pfizer shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Pfizer agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by its counsel or other agent.

19

17. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 below (waiver for beneficiaries paragraph).

18. Pfizer agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19. Pfizer expressly warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and will remain solvent following payment of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to Pfizer, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Pfizer was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20. On the Effective Date of this Agreement or any date thereafter:

20

 (a) The United States shall intervene in the Civil Actions as to the Covered Conduct and decline or consent to the voluntary dismissal as to all other defendants and all other allegations set forth in the Civil Actions.

 (b) Following payment of the Settlement Amount, the Parties shall file a stipulation of dismissal in each of the Civil Actions as follows:

 (1) each stipulation of dismissal shall be with prejudice as to the United States' and Relators' claims as to Pfizer as to the Covered Conduct in each Civil Action pursuant to and consistent with the terms and conditions of this Agreement;

 (2) each stipulation of dismissal shall be without prejudice as to the United States and with prejudice as to Relators as to all other entities and individuals and as to all other claims, or without prejudice to Relators if agreed to by Relators and Pfizer in any separate written agreement(s) entered into by Relators and Pfizer;

 (3) provided, however, that the following claims against Pfizer shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States is obtained, and the Court is so informed: (a) all claims against Pfizer reserved by any Relator for claims not resolved herein, including for allegations in their Civil Actions that are not within the Covered Conduct; (b) Relators' claims for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); (c) Relators' claims under § 3730(h); (d) Relators' claims for a Relator's Share under the Medicaid State Settlement Agreements; and (e) any other claims Relators may have or had against Pfizer that are not expressly resolved herein.

21

21. Except as provided in Paragraph 20, each party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except Relators reserve their rights against Pfizer to seek attorneys' fees, costs and expenses under § 3730(d).

22. The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

23. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement, including any dispute regarding payment of Relator's attorneys' fees, expenses and costs, shall be the district court in which the Civil Action was pending on the Effective Date of this Agreement, except as otherwise agreed by the parties to the dispute, and except that any disputes arising under the CIA shall be resolved exclusively through the dispute resolution provisions set forth in the CIA.

24. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any party for that reason in any dispute.

25. This Agreement constitutes the complete agreement between the Parties with respect to the issues covered by the Agreement. This Agreement may not be amended except by written consent of all the Parties.

26. The individuals signing this Agreement on behalf of Pfizer represent and warrant that they are authorized by Pfizer to execute this Agreement. The individuals signing this

Agreement on behalf of each Relator represent and warrant that they are authorized by that Relator to execute this Agreement. The United States' signatories represent that they are signing this Agreement in their official capacities and they are authorized to execute this Agreement.

27.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which shall constitute one and the same Agreement.

28.    This Agreement is binding on Pfizer's successors, transferees, heirs and assigns.

29.    This Agreement is binding on Relators' successors, transferees, heirs, attorneys and assigns.

30.    All parties consent to the disclosure of this Agreement, and information about this Agreement, to the public after it has been finally executed.

31.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

UNITED STATES OF AMERICA

MICHAEL K. LOUCKS
Acting United States Attorney

By: _Sara Bloom_                    Dated: _8/31/09_
SARA MIRON BLOOM
SUSAN M. POSWISTILO
ZACHARY A. CUNHA
Assistant United States Attorneys
District of Massachusetts

24

By:    _____    Dated: 8/28/08
MICHAEL L. LEVY
United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania

By:    _____    Dated: 8/28/08
MARGARET L. HUTCHINSON
Chief, Civil Division
United States Attorney's Office
Eastern District of Pennsylvania

By:    _____    Dated: 8/28/08
MARILYN MAY
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Pennsylvania

By:    _____    Dated: 8/28/08
CHARLENE KELLER FULLMER
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of Pennsylvania

25

JAMES A. ZERHUSEN
United States Attorney

By:  _Robin Gwinn_____    Dated: _8/28/09_____
ROBIN GWINN
CHERYL MORGAN
Assistant United States Attorneys
Eastern District of Kentucky

TONY WEST
Assistant Attorney General

By: _____    Dated: ___8/31/2009___

JOYCE R. BRANDA
Director
JAMIE ANN YAVELBERG
SANJAY BHAMBHANI
PATRICIA L. HANOWER
COLIN M. HUNTLEY
Trial Attorneys
Civil Division
United States Department of Justice

By: _____        Dated: ___8/31/09___

GREGORY E. DEMSKE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health and Human Services

28

Civil Settlement - Pfizer

By: _____ (Acting Deputy General Counsel) Dated: 28. Aug 2009
For    LAUREL C. GILLESPIE
       Deputy General Counsel
       TRICARE Management Activity
       United States Department of Defense

By: _____      Dated: 8/31/09 _____
     LORRAINE E. DETTMAN
     Assistant Director
     for Insurance Services Programs
     Center for Retirement & Insurance Services
     United States Office of Personnel Management

By: _____      Dated: 8/31/09 _____
     J. DAVID COPE
     Assistant Inspector General for Legal Affairs
     United States Office of Personnel Management

PFIZER INC

By: _____     Dated: _31 August 2009_

[Its Officer]
Pfizer Inc

By: _____     Dated: _8/31/09_
BRIEN O'CONNOR
JOSHUA LEVY
Ropes & Gray LLP
Counsel to Pfizer Inc and Pharmacia & Upjohn Company, Inc.

31

RELATOR JOHN KOPCHINSKI

By: _____          Dated: _August 27, 2009_
JOHN KOPCHINSKI

By: _____          Dated: _8/28/09_
ERIKA KELTON
Phillips & Cohen LLP
Counsel to Relator John Kopchinski

**RELATOR DANA SPENCER**

By: _____     Dated: _____
DANA SPENCER

By: _____     Dated: _____
WILLIAM V. HOYLE, Jr.
The Law Offices of William V. Hoyle, Jr., PC
Counsel to Relator Dana Spencer

33

**RELATOR BLAIR COLLINS**

By: _Blair M Collins_                Dated: _8/28/2009_
BLAIR COLLINS

By: _Suzanne E. Durrell /RMT_
    _Robert m Thomas L._          Dated: _8/28/09_
SUZANNE E. DURRELL
Durrell Law Office
ROBERT M. THOMAS, JR
ROYSTON H. DELANEY.
Thomas & Associates
Counsel to Relator Blair Collins

08/28/2009  15:20    614--326-6060           FEDEX OFFICE     0148                    PAGE  02

**RELATOR GLENN DEMOTT**

By: _Glenn DeMott_                    Dated: _08/28/2009_
     GLENN DEMOTT

By: _____          Dated: _____
     ANN LUGBILL
     Murphy Anderson PLLC
     Counsel to Relator Glenn DeMott

By: _____          Dated: _____
     JOHN C. KAIRIS
     Grant & Eisenhofer, PA
     Counsel to Relator Glenn DeMott

By: _____          Dated: _____
     REUBEN GUTTMAN
     Grant & Eisenhofer, PA
     Counsel to Relator Glenn DeMott

**RELATOR GLENN DEMOTT**

By: _____          Dated: _____

GLENN DEMOTT


By: *Ann Lughill (MA)*          Dated: *8/28/09*

ANN LUGBILL
Murphy Anderson PLLC
Counsel to Relator Glenn DeMott


By: _____          Dated: _____

JOHN C. KAIRIS
Grant & Eisenhofer, PA
Counsel to Relator Glenn DeMott


By: _____          Dated: _____

REUBEN GUTTMAN
Grant & Eisenhofer, PA
Counsel to Relator Glenn DeMott


35

**RELATOR GLENN DEMOTT**

By: _____    Dated: _____

GLENN DEMOTT


By: _____    Dated: _____

ANN LUGBILL
Murphy Anderson PLLC
Counsel to Relator Glenn DeMott


By: _~John C. Kairis (cal)~_____    Dated: _8/28/2005_

JOHN C. KAIRIS
Grant & Eisenhofer, PA
Counsel to Relator Glenn DeMott


By: _~Reuben Guttman~_____    Dated: _8/28/005_

REUBEN GUTTMAN
Grant & Eisenhofer, PA
Counsel to Relator Glenn DeMott

**RELATOR ROBERT LITER**

By: _Robert Liter_    Dated: _8/28/09_
ROBERT LITER


By: _B___ Jr_    Dated: _Aug. 28th, 2009_
BARBARA BONAR
The Law Offices of B. Dahlenburg Bonar
Counsel to Relator Robert Liter

36

**RELATOR CASEY SCHILDHAUER**

By: _____     Dated:_____

CASEY SCHILDHAUER

**RELATOR DAVID FARBER**

By: _____     Dated:_____

DAVID FARBER

By: _____     Dated: 8/28/2009

W. SCOTT SIMMER
Blank Rome LLP
Counsel to Relators Casey Schildhauer and David Farber

37

**RELATOR CASEY SCHILDHAUER**

By: _____     Dated:_____
CASEY SCHILDHAUER

**RELATOR DAVID FARBER**

By: _____     Dated: 8/28/2009
DAVID FARBER

By: _____     Dated:_____
W. SCOTT SIMMER
Blank Rome LLP
Counsel to Relators Casey Schildhauer and David Farber

**RELATOR CASEY SCHILDHAUER**

By: _____     Dated: 8/28/2009
CASEY SCHILDHAUER


**RELATOR DAVID FARBER**


By: _____     Dated: _____
DAVID FARBER



By: _____     Dated: _____
W. SCOTT SIMMER
Blank Rome LLP
Counsel to Relators Casey Schildhauer and David Farber

37

RELATOR STEFAN KRUSZEWSKI

By: _____        Dated: _8/31/200 9_

STEFAN KRUSZEWSKI

By: _____        Dated: _8/31/2009_

BRIAN KENNEY
M. TAVY DEMING
Kenney Egan McCafferty & Young
Counsel to Relator Stefan Kruszewski

38

**RELATOR MARK WESTLOCK**

By: _____    Dated: _____

MARK WESTLOCK

By: _____    Dated: 8/28/2009

W. SCOTT SIMMER
Blank Rome LLP
Counsel to Relator Mark Westlock

08/17/2009  18:14    6365334753                                            PAGE  02

**RELATOR MARK WESTLOCK**

By: _Mark R Westlock_            Dated:_8/28/09_____
      MARK WESTLOCK


By: _____    ._____    Dated:_____
      W. SCOTT SIMMER
      Blank Rome LLP
      Counsel to Relator Mark Westlock

RELATOR RONALD RAINERO

By: _____     Dated: _____

RONALD RANEIRO

By: _____     Dated: _____

JAMES PEPPER
Sheller, PC
Counsel to Relator Ronald Rainero

40

**RELATOR RONALD RAINERO**

By: _____        Dated: _____
    RONALD RANEIRO


By: _____        Dated: _____8/28/09_____
    JAMES PEPPER
    Sheller, PC
    Counsel to Relator Ronald Rainero

ATTACHMENT A

This statement reflects facts as to which Pfizer and the United States agree are true and accurate. It does not contain all of the United States' factually-based contentions regarding Pfizer's marketing of Zyvox, nor does it contain all of Pfizer's responses to those allegations:

1.  Zyvox (linezolid) is an antibacterial agent that is approved by the FDA to treat certain types of infections including, among other approved indications, nosocomial pneumonia caused by methicillin-resistant *Staphylococcus aureus* ("MRSA") and complicated skin and skin structure infections ("CSSSIs") due to MRSA.

2.  Although Zyvox is approved to treat these indications, it has not been demonstrated by substantial evidence to be superior to the primary competitor drug for those indications: vancomycin, an antibiotic that has been on the market for nearly fifty years.

3.  On July 20, 2005, the FDA sent Pfizer a Warning Letter ("Warning Letter") regarding a journal advertisement for Zyvox. In this Warning Letter, the FDA stated that Pfizer's advertisement misbranded Zyvox by making misleading and unsubstantiated implied superiority claims, claims that broadened the indications of Zyvox, and omitted important safety information.

4.  The FDA stated in the Warning Letter that the journal advertisement implied that Zyvox is superior to vancomycin for the treatment of nosocomial pneumonia caused by MRSA. Specifically, the FDA Warning Letter objected to the advertisement's use of certain retrospective analyses of head-to-head clinical trials of linezolid and vancomycin. The FDA stated that these analyses were not prospectively designed or sufficiently powered to demonstrate statistically significant differences in treatment groups. Thus, the FDA stated that the superiority of Zyvox for the treatment of nosocomial pneumonia caused by MRSA had not been demonstrated by substantial evidence and that the advertisement was therefore misleading.

5.  The FDA stated that Pfizer's advertisement misbranded Zyvox in violation of 21 U.S.C. 352(n) & 321(n) and FDA implementing regulations and requested that Pfizer cease dissemination of the journal advertisement and other promotional materials containing similar statements.

6.  After receiving the Warning Letter, Pfizer responded to the FDA, taking the position that it did not believe that the journal advertisement made an improper superiority claim. However, Pfizer informed the FDA that, in response to the FDA's concerns, Pfizer would cease use of the journal advertisement in question. Further, Pfizer informed the FDA that all other Zyvox promotional materials had been reviewed to identify other items that could raise similar concerns, and that steps had been taken to discontinue or appropriately revise any promotional materials that could potentially be misinterpreted in a similar manner. Pfizer also

1

informed the FDA that it was instructing its sales force that materials containing information that the FDA stated constituted an implied superiority claim could no longer be used. Pfizer also advised its sales force to discontinue using certain identified promotional materials and that sales representatives would be provided with replacement pieces.

7.    In addition, at the FDA's request, Pfizer agreed to publish a corrective advertisement in February 2006, which was entitled "IMPORTANT CORRECTION OF DRUG INFORMATION ZYVOX." In this corrective advertisement, Pfizer noted that the FDA had objected to the presentation, in its previous advertisement, of clinical data that showed a more favorable comparison of Zyvox to vancomycin than was shown in the data included in the the Zyvox label, which states that 57% of Zyvox patients and 60% of vancomycin patients in the clinically evaluable population were cured of MRSA. Further, the label reflects that 59% (13/22) of Zyvox patients and 70% (7/10) of vancomycin patients with microbiologically-confirmed MRSA at baseline were clinically cured.

8.    Despite notifying its sales force that it should cease using promotional materials that raised concerns of the type identified in the FDA Warning Letter, Pfizer did not provide adequate guidance to its sales force regarding what statements were permissible concerning data from head-to-head trials and retrospective analyses and what promotional statements were not permitted.

9.    As a result, Pfizer's sales personnel thereafter continued to make claims to physicians that Zyvox was superior to vancomycin for certain patients with MRSA, which included the claim that Zyvox would have a higher cure rate, and would save more lives, despite the fact that these claims were inconsistent with the FDA's Warning Letter and Zyvox's FDA approved label, and which were inconsistent with the manner in which Pfizer, after the receipt of the Warning Letter, agreed to present the clinical data cited by the FDA.

10.    Moreover, certain Pfizer sales managers, including a regional manager and a headquarters-based vice president, were aware of and, in certain cases, encouraged a sales message that Zyvox was superior to vancomycin for certain patients, despite their knowledge of the FDA Warning Letter and the issues it raised.



**U.S. Department of Justice**

Criminal Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

JUL 2 8 2009

The Honorable Michael K. Loucks
Acting United States Attorney
District of Massachusetts
Boston, Massachusetts 02210

Attention:     Susan Winkler
               Assistant United States Attorney

Re:     Global Non-prosecution Agreement for Pharmacia & Upjohn Company, Inc.

Dear Mr. Loucks:

This is in response to your request for authorization to enter into a global case disposition agreement with the business entity known as Pharmacia & Upjohn Company, Inc.

I hereby approve the terms of the Plea Agreement, including Paragraphs 5 and 15, in which the United States Attorney's Offices and, with the exception of the Fraud Section, the Criminal Division of the Department of Justice agree not to initiate further criminal prosecutions as set out therein.

You are authorized to make this approval a matter of record in this proceeding.

Sincerely,

John C. Keeney
Deputy Assistant Attorney General

EXHIBIT C

## ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, the attached criminal Information, and the Civil Settlement Agreement including its attachment in their entirety, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia & Upjohn Company, Inc.'s attorneys. I am further authorized to acknowledge on behalf of Pharmacia & Upjohn Company, Inc. that these documents fully set forth Pharmacia & Upjohn Company, Inc.'s agreement with the United States, and that no additional promises or representations have been made to Pharmacia & Upjohn Company, Inc. by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Dated: _Auc 28th, 2009_

_____
Vice President and Secretary
Pharmacia & Upjohn Company, Inc.


Dated: _____

_____
BRIEN T. O'CONNOR
Ropes & Gray LLP
Counsel for Pharmacia & Upjohn Company, Inc.

11

EXHIBIT D

## ACKNOWLEDGMENT OF PLEA AGREEMENT

The Board of Directors has authorized me to execute this Plea Agreement on behalf of Pharmacia & Upjohn Company, Inc. The Board has read this Plea Agreement, the attached criminal Information, and the Civil Settlement Agreement including its attachment in their entirety, or has been advised of the contents thereof, and has discussed them fully in consultation with Pharmacia & Upjohn Company, Inc.'s attorneys. I am further authorized to acknowledge on behalf of Pharmacia & Upjohn Company, Inc. that these documents fully set forth Pharmacia & Upjohn Company, Inc.'s agreement with the United States, and that no additional promises or representations have been made to Pharmacia & Upjohn Company, Inc. by any officials of the United States in connection with the disposition of this matter, other than those set forth in these documents.

Dated: _____

                      James Gibney
                      Vice President and Secretary
                      Pharmacia & Upjohn Company, Inc.

Dated: 8/31/09

                      BRIEN T. O'CONNOR
                      Ropes & Gray LLP
                      Counsel for Pharmacia & Upjohn Company, Inc.

11

## EXHIBIT E

PHARMACIA & UPJOHN COMPANY, INC.

SECRETARY'S CERTIFICATE

I, James Gibney, do hereby certify that I am Vice President and Secretary of Pharmacia & Upjohn Company, Inc., a corporation organized under the laws of Delaware (the "Company"), and do hereby further certify that:

The persons named below have been duly elected and qualified as an officer of the Company:

| NAME | TITLE |
| --- | --- |
| Thomas R. Kelly | President & Treasurer |
| James Gibney | Vice President and Secretary |

Attached hereto is a true, correct, and complete copy of the resolutions of the Board of Directors of the Company adopted on August 24, 2009. Such resolutions have not been modified, amended or rescinded and remain in full force and effect as of the date hereof.

IN WITNESS WHEREOF, I have executed this Certificate on behalf of the Company on this 26 day of August 2009.

PHARMACIA & UPJOHN COMPANY, INC.

By: _____
Name: James Gibney
Title: Vice President & Secretary

# PHARMACIA & UPJOHN COMPANY, INC.

## UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS

The undersigned, being all the directors of Pharmacia & Upjohn Company, Inc.(the "Company"), a wholly-owned subsidiary of Pharmacia & Upjohn Company LLC, hereby waive all notice of the time, place or purpose of a meeting and consent to, approve and adopt the following resolution without a meeting:

WHEREAS, the United States Attorney's Office for the District of Massachusetts has been conducting an investigation into the Company's conduct relating to the drug Bextra;

WHEREAS, the Board of Directors has consulted with legal counsel in connection with this matter;

WHEREAS, the Company's legal counsel has been negotiating a resolution of this matter;

WHEREAS, the Company's legal counsel has reported to the board the terms and conditions of a proposed resolution of this matter;

WHEREAS, the Board of Directors has been advised of the contents of the Information and proposed Plea Agreement in this matter;

NOW THEREFORE, BE IT:

RESOLVED; that the Company is hereby authorized to enter into the Plea Agreement dated August 24, 2009, between the United States Attorney for the District of Massachusetts and Pharmacia & Upjohn Company, Inc., the "Agreement."

FURTHER RESOLVED, that the Company is authorized to plead guilty to the charge specified in the Information.

FURTHER RESOLVED, that James Gibney, Vice President and Secretary, or any other Officer of the Company, are hereby authorized and directed to take all actions and deliver any agreements, certificates and documents and instruments with respect to or contemplated by the Agreement and matters set forth above, including, without limitation, the payment of all amounts, fees, costs and other expenses, necessary or appropriate to effectuate the purpose and intent of the foregoing resolutions and to effectuate and implement the resolutions contemplated hereby.

FURTHER RESOLVED, that any actions taken by the Officers of the Company prior to the adoption of these resolutions, that are within the authority conferred hereby, are hereby fully ratified, confirmed and approved as the act and deed of the Company.

This Written Consent may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned Directors of the Company have executed this consent as of the 24th of August, 2009.

_____
Thomas R. Kelly

_____
James Gibney