_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

OCT 03 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

RE    THE HONORABLE JAMAL N. WHITEHEAD

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| QueerDoc, PLLC, <br><br>        Movant, <br><br> v. <br><br> U.S. Department of Justice, <br><br>        Respondent. | No. 2:25-MC-00042-JMW <br><br> QueerDoc, PLLC's Motion to Strike or, in the Alternative, for Leave to File Response <br><br> **FILED UNDER SEAL** |

MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE
RESPONSE
(No. 2:25-MC-00042-JNW)

## INTRODUCTION

More than two months after the parties completed briefing on QueerDoc's motion to quash, Respondent U.S. Department of Justice ("DOJ") filed a supplemental brief disguised as an affidavit. Through this affidavit, DOJ has, for the first time: (1) attempted to articulate a legal theory to support its investigations of providers of gender affirming care; and (2) conjured up factual allegations that—DOJ claims—underlie its criminal investigation of QueerDoc specifically. DOJ had ample opportunity to advance both sets of arguments in response to QueerDoc's motion to quash, yet never did so. Neither the Federal Rules of Civil Procedure nor this jurisdiction's Local Rules countenance DOJ's belated effort to bolster its pleadings in the wake of an adverse (and correct) decision by the United States District Court for the District of Massachusetts. The Court should therefore strike DOJ's latest filing.[1]

In the alternative, because QueerDoc had no opportunity to address DOJ's latest legal and factual arguments in reply, the Court should permit QueerDoc to file its proposed response brief, appended hereto as Exhibit 1.

## ARGUMENT

So as "to give fair consideration" to the parties and their arguments, while at the same time "not clog[ging] the judicial system," both Fed. R. Civ. P. 7 and LCR 7 sets firm briefing rules. *See N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir. 1997); *Selbi Charyeva3 v. Mayorkas*, 2025 WL 1331794, at *3 (W.D. Wash. May 7, 2025). In this jurisdiction, the parties are afforded a motion, an opposition, and a reply. *See generally* LCR 7. Here, DOJ has attempted to file an additional, supplemental brief (styled as an affidavit) making entirely new allegations and legal arguments that it could have raised in its opposition.

---

[1] So as to preserve its alternative request for leave to file, QueerDoc has styled this pleading as a motion, rather than as an opposition to DOJ's praecipe. Nevertheless, LCR 7(m) makes clear that a supplemental document is not deemed filed unless and until the Court approves the moving party's request to supplement that is set forth in a praecipe.

MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE
RESPONSE – 1
(No. 2:25-MC-00042-JNW)

DOJ has attempted to get its belated factual and legal arguments before the Court by filing the affidavit as an exhibit to a praecipe. Under the Local Rules, where a party seeks to "add an additional document" after briefing is completed, that party must provide (via praecipe) a sufficient explanation for "why the [additional] document was not included with the original filing." *Id.* (m). Such supplements are disfavored, however, and "information, authority, or arguments that could have been presented in the original filing" should be stricken. *See McNae v. ARAG Ins. Co.*, 2025 WL 2579734, at *3 (W.D. Wash. Sept. 4, 2025). DOJ cannot carry this burden.

Begin with DOJ's primary excuse: that it did not file a supporting affidavit on the legal and factual bases for the subpoena in its opposition because, in its view, QueerDoc did not cite authority requiring such an affidavit. As a threshold matter, there was nothing stopping DOJ from filing an affidavit along with its opposition to QueerDoc's motion to quash. Indeed, as evidenced by DOJ's belated filing, such an affidavit could have been responsive to QueerDoc's arguments in its motion. And even taking as true DOJ's mistaken premise that a supporting affidavit need not be filed until the opposing party cites some legal authority suggesting its necessity, Praecipe at 1-2, QueerDoc did exactly that in its opening motion. Among other things, QueerDoc maintained that, "[a]t the very least," "discovery and/or an evidentiary hearing" into discriminatory purpose would be necessary. Mot. to Quash at 9 (citing *United States v. Samuels*, 712 F.2d 1342 (9th Cir. 1983)). As the Ninth Circuit explained decades ago in *Samuels*, the issuing agency "typically" demonstrates "good[]faith" *"through the introduction of the sworn declaration of the [law enforcement] agent who issued the summons."* *Id.* at 1345 (emphasis added). Regardless of DOJ's excuse for failing to file a declaration two months ago, it is much too late now for DOJ to attempt to file what is, in essence, a supplemental brief.

Moreover, DOJ argues that its proposed supplemental declaration "counters QueerDoc's assertion that the administrative subpoena issued here was for an improper purpose." Praecipe at 2. Whether the subpoena was issued for an improper purpose underlies much of the merits of this

MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE
RESPONSE – 2
(No. 2:25-MC-00042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

dispute. *Compare* Mot. to Quash at 6-9, *with* Opp'n to Mot. to Quash at 3-9, *and* Repl. Mot. to Quash at 1-4. DOJ therefore had every incentive to file its proposed declaration with its opposition. And, taking as true the declarant's assertion that "[t]his matter is being handled by several veteran, career prosecutors" and a team of "FBI agents and analysts," Gordus Decl. ¶ 31, DOJ surely had the ability to file the proposed declaration at that time, too. Nor has DOJ made any argument otherwise.

Moreover, the content of the proposed declaration itself belies DOJ's assertion that the declaration "makes no new arguments." To the contrary. Paragraphs 4 through 20 (out of 31) present new legal authority or arguments (or both) regarding the scope of the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq. Compare id.* ¶¶ 4-20, *with* Opp'n to Mot. to Quash at 8 (argument limited to just one paragraph). In fact, the proposed declaration articulates entirely new theories—*e.g.*, an as-yet-undisclosed 18 U.S.C. § 371-esque "conspiracy" charge predicated upon alleged "receipt[] [of] promotional [or scientific] materials" that "encourage prescribing puberty blockers or cross-sex hormones." Gordus Decl. ¶ 29. The proposed declaration also makes new *factual* arguments, including an entire subsection entitled "Relevant Facts About the Subpoenaed Petitioner," *id.* at 7—factual allegations that could have been advanced in opposition and to which QueerDoc could have responded in reply.

## CONCLUSION

Altogether, the proposed declaration is indistinguishable from a surreply or a supplemental legal brief. It arrives more than two months too late, and with no procedural mechanism authorizing its filing. The Court should strike the praecipe, the declaration, and its supporting documents. Alternatively, the Court should afford QueerDoc the opportunity to respond to these new legal arguments and factual allegations and grant QueerDoc leave to file the proposed brief appended hereto.

MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE
RESPONSE – 3
(No. 2:25-MC-00042-JNW)

DATED this 3rd day of October, 2025.

By:

Harry H. Schneider, Jr., WSBA No. 9404
David B. Robbins, WSBA No. 13628
Shireen Lankarani, WSBA No. 61792
**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
DRobbins@perkinscoie.com
SLankarani@perkinscoie.com

Paula R. Ramer*
Marcus A. Asner*
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Paula.Ramer@arnoldporter.com
Marcus.Asner@arnoldporter.com

Jaclyn Machometa*
Brittney Nagle
**Arnold & Porter Kaye Scholer LLP**
500 Boylston Street, 20th Floor
Boston, MA 02116
Telephone: (617) 351-8050
Facsimile: (617) 226-9199
Jaclyn.Machometa@arnoldporter.com
Bee.Nagle@arnoldporter.com

Samuel D. Kleinman*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Sam.Kleinman@arnoldporter.com

*Attorneys for Movant*
*QueerDoc, PLLC*

*Admitted pro hac vice*

MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE
RESPONSE – 4
(No. 2:25-MC-00042-JNW)

# Exhibit 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QueerDoc, PLLC, | No. 2:25-MC-00042-JMW |
| Movant, | QueerDoc, PLLC's Response to Government's Praecipe to File Additional Document |
| v. | |
| U.S. Department of Justice, | **FILED UNDER SEAL** |
| Respondent. | |

## INTRODUCTION

A supplemental brief in all but name, DOJ's Praecipe to File Additional Document (the "Praecipe") and the Declaration of DOJ Attorney Allan Gordus (the "Gordus Declaration") are "too little, too late."

In a last-ditch attempt to bolster its improper subpoena, DOJ offers the Gordus Declaration. The Gordus Declaration, in turn, purports to offer additional support for DOJ's basis for issuing the Subpoena. In reality, the Gordus Declaration improperly advances new legal theories that the Government could have made, but failed to offer, either in its opposition to QueerDoc's motion to quash or in a declaration attached to their opposition. Even were these new arguments timely advanced, they fail on their merits. The Gordus Declaration actually further illustrates the

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 1
(No. 2:25-MC-0042-JNW)

discriminatory animus that animates the subpoena. And the novel theory articulated by DOJ—that the FDCA prohibits a physician's off label prescribing of a drug—finds no support in the law.

Even if it is inclined to consider the Gordus Declaration, the Court should quash the subpoena.

<strong>ARGUMENT</strong>

**A.      DOJ's Post-Hoc Attempt to Bolster Its Arguments Only Serves to Highlight the Pretextual Nature of Its "Investigation."**

What Mr. Gordus has to say—more than two months after DOJ's reply—actually undermines DOJ's attempts to paint a picture of a bona fide investigation.

As a threshold matter, the delay in filing this post-hoc rationale for DOJ's investigation into QueerDoc itself undermines the veracity of the Gordus Declaration. DOJ was previously given multiple opportunities to articulate a basis for its purported investigation, yet DOJ never did so—and, in fact, acknowledged it had no such basis. When counsel for QueerDoc initially contacted DOJ to discuss the Subpoena, counsel for QueerDoc asked whether the DOJ attorneys had particular concerns about QueerDoc; the DOJ attorneys stated only that they are aware that QueerDoc is a "prominent" provider of gender affirming care through telehealth and that it prescribes puberty blockers and hormones "under the FDCA." Ramer Decl. ¶ 7. They added, however, that there was nothing more of concern, saying "that's the extent of it." *Id.* Then, when DOJ filed its Opposition, it again failed to articulate any connection between the information sought in the Subpoena and its purported investigation. At the time, DOJ's sole attempt to establish a connection between the Subpoena and any specific concerns about QueerDoc was to argue only that the FDCA "of course relate[s] to how [QueerDoc's] providers billed for medical services to prescribe or deliver, *inter alia*, the pharmaceuticals in question." Opp'n at 9. In other words, at no point since DOJ issued the Subpoena in June 2025 has it attempted to articulate a specific concern regarding QueerDoc to attempt to justify its purported investigation. Until now.

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

Yet despite DOJ's attempt to put what is essentially a supplemental brief before the Court, the Gordus Declaration fails to demonstrate that DOJ had a legitimate basis for its investigation into QueerDoc.

Begin with what the Gordus Declaration *does not say*. *First*, it does not explain *when* the investigation began. All documentary evidence and common sense point to a nationwide investigation that began *right after* an instruction from the White House which, in its own terms, ordered a "nationwide investigation" (as Mr. Gordus terms it) for the express purpose of ending *all* gender affirming care in the United States. The Gordus Declaration offers no response.

*Second*, the Gordus Declaration does not address *why* DOJ commenced the "nationwide investigation" into whose wake QueerDoc has been drawn. As QueerDoc explained in its opening brief and reply, both the White House and DOJ high officials have explained that the "nationwide investigation" was commenced to halt *lawful* gender affirming care. For her part, Attorney General Bondi has reiterated this motivation *during the pendency of this action*. *See, e.g.*, Solcyré Burga, "Boston Hospital Hails 'Safeguarding' As Judge Blocks Trump Administration's Subpoena of Trans Kids' Medical Records," *TIME* (Sept. 10, 2025) https://perma.cc/JGJ3-SZEG (In reaction to the U.S. District Court for the District of Massachusetts' order[1] quashing an identical subpoena, declaring "this Department of Justice will use every legal and law enforcement tool available to protect innocent children from being mutilated under the guise of 'care.'"). The Gordus Declaration offers no response.

*Third*, the Declaration does not address *who ordered* the investigation to begin. As evidenced by the White House's public comments, QueerDoc contends that *the White House* ordered a "nationwide investigation," such that the investigation into QueerDoc began only as one part of this larger dragnet. The Gordus Declaration offers no response.

---

[1] *In re Administrative Subpoena No. 25-1431-019*, --- F. Supp. 3d ---, 2025 WL 2607784 (D. Mass. Sept. 9, 2025).

QUEERDOC'S RESPONSE TO PRAECIPE TO FILE ADDITIONAL DOCUMENT – 3 (No. 2:25-MC-0042-JNW)

*Finally*, although the Gordus Declaration—for the first time—attempts to make factual allegations specific to QueerDoc, it conspicuously does not address *when* DOJ became aware of those "facts." As discussed above, because the DOJ attorneys never previously made any of those allegations, it seems clear that DOJ only recently began the work of actually looking into QueerDoc's practices—months *after* issuing the Subpoena. The Gordus Declaration offers no response.

In short, the Gordus Declaration offers no response to QueerDoc's core argument—that the Subpoena was issued for an improper, pretextual purpose: ending the availability of gender affirming care in the United States.

And what the Gordus Declaration *does* say undermines DOJ's declamations that it harbors no discriminatory animus. It is clear, for example, that DOJ is *not* investigating providers of *these very same drugs* when not provided to DOJ's disfavored class—transgender Americans. *See* Gordus Decl. ¶ 18. In doing so, the Gordus Declaration only strengthens QueerDoc's equal-protection challenge to the subpoena. *See Washington v. Trump*, 768 F. Supp. 3d 1239, 1250 (W.D. Wash. 2025) (holding that enforcement regime predicated on gender identity violates Equal Protection Clause). Moreover, the Gordus Declaration admits that this investigation is not aimed at just one provider, or some small subset of what it fears may be isolated instances of fraud in certain pockets of the medical community. Gordus Decl. ¶ 31. Instead, it is a "substantial national investigation," *id.*, aimed at an entire class of Americans. The prosecutorial power is not so blunt a tool, and a subpoena issued to "interfere" with a state's right to "protect [gender affirming care] within its borders, to harass and intimidate [doctors within those borders] to stop providing such

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 4
(No. 2:25-MC-0042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

care, and to dissuade patients from seeking such care" is beyond the bounds of the law. *In re Administrative Subpoena*, 2025 WL 2607784, at *7.[2]

**B.      DOJ Articulates No Basis to Investigate QueerDoc**

Moreover, in attempting to articulate a legal basis for its investigation of QueerDoc (and dozens of other providers of gender affirming care), the Gordus Declaration asserts a novel application of the Food, Drug and Cosmetic Act ("FDCA") that would allow DOJ to prosecute doctors for providing lawful medical services. Such an application would reflect a significant departure from its past practice of using the FDCA, which prohibits "[t]he adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce," 21 U.S.C. § 331(b), to prosecute pharmaceutical manufacturers alleged to have *promoted* drugs for uses for which they have not been approved ("off-label" promotion).[3] For example, Mr. Gordus asserts that "[i]f a drug manufacturer or other person[4] distributes an approved drug for an unapproved use, the manufacturer or other person could possibly be charged with misbranding the drug..." Gordus Decl. ¶ 9.

---

[2] The Gordus Declaration also mischaracterizes at least one of its new factual allegations. Citing a news report, the Declaration purports to quote Dr. Crystal Beal (QueerDoc's principal) as stating that QueerDoc "practice[s] a form a civil disobedience" and that Dr. Beal "feel[s] compelled to defy anti-trans law." Gordus Decl. ¶ 25. Perhaps in DOJ's haste to file its belated Declaration, Mr. Gordus misreads this news report. In fact, the article, which details death threats doctors providing this care have faced, quotes Dr. Beal as stating, "I provide care in a different way than my allied colleagues . . . I'm worried about my colleagues dying." Emma Davis, "Death threats, legal risk and backlogs weigh on clinicians treating trans minors," *NBC News* (Aug. 28, 2024) https://perma.cc/LZ23-H6KA. The reporter paraphrases this alleged statement regarding civil disobedience. *Id.*

[3] Courts have consistently found, however, that the truthful, non-misleading off-label promotion of drugs is protected by the First Amendment. *See United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012); *Amarin Pharma, Inc. v. FDA*, 119 F. Supp. 3d 196 (S.D.N.Y. 2015).

[4] Given that the FDA and common understanding rule out applying this to health care providers, Mr. Gordus presumably intends by the term "other persons" to encompass drug distributors, packagers and their employees or representatives, none of which are applicable here.

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 5
(No. 2:25-MC-0042-JNW)

It is therefore not surprising that Mr. Gordus does not cite a single case in which a *provider* was found guilty of violating the FDCA for prescribing a drug off label, nor does he cite a single settlement in which the government asserted that theory. In fact, Mr. Gordus acknowledges this fact, citing (and attaching) a series of cases brought against pharmaceutical manufacturers. *Id.* ("CPB has participated in successful prosecutions of *drug manufacturers* for such illegal conduct.") (emphasis added).

In fact, the U.S. Food and Drug Administration ("FDA") has consistently recognized that the acts described in the Gordus Declaration—prescribing drugs off label—do not fall within the FDCA's ambit. Drugs are commonly prescribed (and used) off label.[5] Various studies have found that more than 20% of prescriptions are off label; that number is even higher for certain patient populations, such as pediatric patients. *See* "Ten Common Questions (and Their Answers) About Off-label Drug Use," National Library of Medicine, https://perma.cc/664L-G3NV (last visited Oct. 2, 2025). The off label prescribing (and use) of drugs in certain areas can become the standard of care, as is the case with drugs used to treat gender dysphoria. *See id.*[6] Indeed, the FDA's own

_____

[5] In fact, during the height of the COVID pandemic, the Administration embraced the use of certain medications to treat COVID, even though the safety and efficacy of such off label use had not been established. *See* Donald Trump (@realDonaldTrump), X (Mar. 21, 2020, at 10:13 AM ET), https://perma.cc/3U4R-3F97 (stating "HYDROXYCHLOROQUINE & AZITHROMYCIN, taken together, have a real chance to be one of the biggest game changers in the history of medicine...."; Donald Trump (@realDonaldTrump), X (Apr. 1, 2020, at 9:01 PM), https://perma.cc/9BEH-EHPT (reposting "@OANN Hydroxychloroquine proving an effective treatment for coronavirus patien[ts]....").

[6] Citing to a widely-criticized, politically-motivated report issued by HHS in May 2025, Mr. Gordus attempts to argue that "the evidence for the safety and efficacy of these drugs for the treatment of gender dysphoria in minors is weak." Gordus Decl. ¶ 19. Contrary to Mr. Gordus's assertions, the use of these drugs to treat gender dysphoria is well-established and the standard of care for this patient population. *See* Transgender Medical Treatments and Procedures Amendments (S.B. 16, 2023), Report to the Utah Legislature Health and Human Services Interim Committee (May 2025), https://perma.cc/C8US-VBB3; Nadia Dowshen, et. al., *A Critical Scientific Appraisal of the Health and Human Services Report on Pediatric Gender Dysphoria*, Journal of Adolescent Health, Vol. 77, Issue 3, 342-345 (Sept. 2025), https://perma.cc/T7DH-AHFL; Susan J. Kressly, AAP Statement on HHS Report Treatment for Pediatric Gender Dysphoria, American Academy of Pediatrics, (May 1, 2025), https://perma.cc/A6VG-X9XF.

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 6
(No. 2:25-MC-0042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

website recognizes that providers may freely prescribe drugs off label within their clinical discretion. *See* Understanding Unapproved Use of Approved Drugs "Off Label," U.S. Food and Drug Administration, https://perma.cc/3DLY-6MGJ ("From the FDA perspective, once the FDA approves a drug, healthcare providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate for their patient.") (last visited Oct. 2, 2025).[7]

Therefore, the legal theory set forth in the Gordus Declaration reflects a novel application of the FDCA—one that DOJ has explicitly disclaimed in prior cases. *See U.S. v. Evers*, 643 F.2d 1043 (5th Cir. 1981). In *Evers*, the government sought to prosecute a physician under the FDCA for his "promotion and advertising" of the off label use of a drug—but made clear that it did not seek to prosecute him merely for prescribing drugs off label. *Id.* at 1049 ("[T[he government agrees with Dr. Evers that the provisions of the [FDCA] and the regulations of the FDA that are now in force do not prevent him from prescribing for uses not approved by the FDA drugs which have been approved by the FDA for some other purpose."). Even Mr. Gordus grudgingly acknowledges that the FDCA does not prohibit providers from prescribing drugs off label. Gordus Decl. ¶ 8, at 4 n. 2 ("As noted above, it is possible for doctors to prescribe an approved drug for an unapproved use without violating the FDCA.").

Perhaps recognizing the novelty of his FDCA theory, Mr. Gordus also asserts that "[i]f a drug manufacturer or other person distributes (or causes the distribution of) an approved drug with false or misleading labeling for an unapproved use, the manufacturer or other person could possibly be charged with misbranding the drug or distributing a misbranded drug." Gordus Decl.

---

[7] As QueerDoc has explained in its prior briefing, Motion at 11, even the Bondi and Shumate Memos implicitly recognize that the FDCA does not reach providers. For instance, in directing the Consumer Protection Branch to investigate the potential misbranding of puberty blockers or hormones, the Bondi Memo directs investigations of "manufacturers and distributors"—not providers. Likewise, the portion of the Shumate Memo that tasks the Consumer Protection Branch with investigating potential violations of the FDCA focuses on investigations of "pharmaceutical companies that manufacture drugs used in connection with so-called gender transition"—again, not providers.

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 7
(No. 2:25-MC-0042-JNW)

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

¶ 12. Although he readily acknowledges that CPB has only "participated in successful prosecutions of *manufacturers* for false and misleading labeling," *id.* (emphasis added), he then attempts to find something QueerDoc has said or done that he can argue is false or misleading. Though he admits that QueerDoc's website "gives written explanations of how the drugs work, what the risks and benefits are, and how they are used," Gordus Decl. ¶ 23, he lands on a single cherry-picked statement on QueerDoc's website: "Puberty blockers are an option to put a 'pause button' on puberty and are completely reversible." *Id.* He argues this statement is "potentially misleading," because HHS and others "have stated that some effects are uncertain or possibly permanent." *Id.*

At most, Mr. Gordus raises an issue of clinical judgment—the exact area that the FDA (and DOJ) has long recognized as squarely within the practice of medicine, and, thereby, outside the scope of the FDCA.[8] *See Evers*, 643 F.2d at 1048 (noting that FDA had specifically told Dr. Evers that he could legally prescribe drugs off label, as it "is considered 'the practice of medicine'").[9]

Mr. Gordus's search to find a reason that the diagnostic codes that QueerDoc uses could be relevant to DOJ's purported investigation similarly fail. *See* Gordus Decl. ¶ 24 (asserting that because QueerDoc's website suggests that it may use "endocrine disorder" diagnosis codes and will identify gender-related treatments when specifically required, that evidences an intent to "defraud and mislead" under federal law); ¶ 28 (suggesting that QueerDoc's billing, coding and reimbursement practices may reflect an effort to "disguise or hide potential FDCA violations and potentially secure health care benefit program reimbursements through fraud" without offering

---

[8] As discussed *supra*, these treatments are the standard of care for treating transgender individuals. Moreover, puberty blockers are used "on label" to treat precocious puberty in cisgender individuals. Mr. Gordus seems to take no issue with that, nor does he explain why the use of puberty blockers in transgender individuals poses any different safety risks.

[9] Indeed, in *Evers*, despite the fact that Dr. Evers had issued a pamphlet that underplayed the "serious dangers" associated with the treatments he provided, the Court held that Dr. Evers did not violate the FDCA, finding that under the FDCA, prescription drugs only required adequate directions for use by physicians, not patients. 643 F.2d at 1046, 1053-54.

Arnold & Porter
601 Massachusetts Ave, NW
Washington, DC 20001-3742
Phone: +1.202.942.5000

any indicia that such billing, coding and reimbursement practices exist). But as discussed *supra*, the FDCA does not prohibit the off label prescribing of drugs, and Mr. Gordus fails to credibly explain how QueerDoc's use of diagnostic codes or billing practices could implicate the FDCA, particularly given that QueerDoc does not participate in any health insurance programs or submit claims. *See* QueerDoc, "Our Pricing" (2025), https://perma.cc/9XHR-9LC7. Once again, it is therefore not surprising that Mr. Gordus has not cited a single case or otherwise attempted to explain why QueerDoc's use of particular diagnostic codes could implicate the FDCA.

Finally, Mr. Gordus's remaining attempts to justify the Subpoena's requests as relevant fail because they are all premised on the same faulty interpretation of the FDCA. For example, Mr. Gordus argues that information on QueerDoc's relationships with manufacturers, distributors, and pharmacies "could support a FDCA theory (including conspiracy)," Gordus Decl. ¶ 29, without any explanation, let alone a single shred of credible evidence suggesting a conspiracy. Similarly, Mr. Gordus attempts to justify the Subpoena's requests for sensitive patient records, including those of minor patients, by again relying on vague, unsubstantiated potential theories of liability, and completely fails to address any of the patient confidentiality concerns and obligations QueerDoc has previously raised.[10] Mr. Gordus therefore has failed to show that the Subpoena's requests are anything other than an impermissible fishing expedition. *FDIC v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997).

## CONCLUSION

For the foregoing reasons, the Court should reject the fatally flawed and untimely post-hoc rationales offered in the Gordus Declaration and strike it from the record in this case.

---

[10] Similarly, Mr. Gordus alleges that the diagnostic codes used by QueerDoc could violate other federal criminal statutes. Gordus Decl. ¶ 24. Mr. Gordus makes this vague allegation without any detail, let alone evidence that QueerDoc used deceptive or inaccurate diagnostic codes or submitted any claims.

QUEERDOC'S RESPONSE TO PRAECIPE TO FILE ADDITIONAL DOCUMENT – 9
(No. 2:25-MC-0042-JNW)

DATED this 3rd day of October, 2025.

By: _s/_

Harry H. Schneider, Jr., WSBA No. 9404
David B. Robbins, WSBA No. 13628
Shireen Lankarani, WSBA No. 61792
**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
HSchneider@perkinscoie.com
DRobbins@perkinscoie.com
SLankarani@perkinscoie.com

Paula R. Ramer*
Marcus A. Asner*
Brittney Nagle*
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Paula.Ramer@arnoldporter.com
Marcus.Asner@arnoldporter.com
Bee.Nagle@arnoldporter.com

Jaclyn Machometa*
**Arnold & Porter Kaye Scholer LLP**
500 Boylston Street, 20th Floor
Boston, MA 02116
Telephone: (617) 351-8050
Facsimile: (617) 226-9199
Jaclyn.Machometa@arnoldporter.com

Samuel D. Kleinman*
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Sam.Kleinman@arnoldporter.com

*Attorneys for Movant
QueerDoc, PLLC*

* *Admitted pro hac vice*

QUEERDOC'S RESPONSE TO PRAECIPE TO
FILE ADDITIONAL DOCUMENT – 10
(No. 2:25-MC-0042-JNW)